STATE OF IOWA v. BETSY SMITH, Appellant.

**Murder by Poison.** An instruction to find the defendant in a murder trial guilty, if the jury find from the evidence, beyond a reasonable doubt, that she gave or was a party to the giving of a deadly poison to the deceased, of which he died, without requiring them to find that the poison was given feloniously, is erroneous.

**Accomplice.** Under Code, 1873, section 4559, providing that the corroboration of an accomplice is not sufficient, "if it merely shows the commission of the offense or the circumstances thereof," a charge that "the corroboration is not sufficient if it merely shows that the offense has been committed by some person" was insufficient in omitting reference to "the circumstances "

DEGREE OF EVIDENCE REQUIRED. A preponderance of evidence showing that a witness for the state was an accomplice of defendant, is sufficient to require her corroboration by other evidence tending to connect defendant with the crime charged, before he can be convicted That she was an accomplice, need not be shown beyond a reasonable doubt.

**Motive:** CIRCUMSTANTIAL EVIDENCE. If an act or a declaration of an accused occuring prior to the commission of the crime is admissible on the question of motive, it may be shown by circumstantial evidence.

RELEVANCY. The state sought to show that defendant charged with poisoning her husband was connected with a shooting of the husband which occurred before he died of poison. There was a trial as to the shooting at which the husband *testified for the state,*

identifying another than his wife as his assailant. *Held*, this evidence of the dead husband might be introduced by the wife, on her trial for poisoning.

**Included Offenses:** INSTRUCTIONS. Since Code, 1873, section 3849, provides that all murder perpetrated by means of poison is murder in the first degree, a defendant charged with poisoning is guilty of that offense, or of nothing; and consequently it is not necessary, on his trial, to charge in regard to different degrees.

**Separation of Jurors.** Under Code, 1873, section 4434, providing that the jurors in a criminal case may be permitted to separate "except where one of the parties objects thereto," it is error, in a case tried on indictment, to permit a separation over defendant's objection.

**Appeal:** BILL OF EXCEPTIONS. The action of the trial court respecting the separation of the jury in a criminal trial, as shown by the stenographer's notes, is before the supreme court on appeal, where the bill of exceptions states that the short-hand notes contain not merely the evidence and rulings thereon, but the proceedings on the trial, and that the ruling of the court and the exceptions of the defendant are as stated in the notes, and the certificate of the judge attached to the short-hand report, making it a part of the record, states that it contains all the objections and rulings made and exceptions taken, notwithstanding that the bill of exceptions in reciting what is made a part of the record refers to the notes of the evidence and the translation thereof when made, and not to rulings and proceedings not included in the evidence.

*Appeal from Polk District Court.*—HON. S. F. BALLIET, Judge.

TUESDAY, OCTOBER 5, 1897.

THE defendant was accused of the crime of murder in the first degree, was tried by jury, found guilty, and adjudged to be imprisoned in the state penitentiary at Anamosa during the term of her natural life. From that judgment she appeals.—*Reversed.*

*F. B. Huckstep* and *Dale, Kinkead & Bissel* for appellant.

*Milton Remley,* attorney general, *Jesse A. Miller,* and *James A. Howe* for the state.

VOL. 102 Ia – 42

ROBINSON, J.—The indictment charges that on the twenty-fourth day of April, 1894, the defendant committed the crime of murder in the first degree, by wilfully, and with premeditation and malice aforethought, administering to Michael Smith a deadly poison, which caused his death on the next day. Michael Smith was the husband of the defendant. About one year preceding his death, after he had retired for the night, and while alone with the defendant in his bedroom, he received a gunshot wound, which made him wholly blind. The wound appeared to have been made by a bullet, which entered his head just back of the left eye, and passed through the head, making its exit in the right temple, just back of the right eye. The optic nerves were destroyed, but the brain was not injured. At that time Smith held a certificate of membership issued by the Locomotive Engineers' Mutual Life Insurance Association, which provided for the payment of the sum of three thousand dollars in case of the total and permanent loss of eyesight after the expiration of one year from the commencement of such disability, and we infer, from a meager statement in the record, that a like sum would have been payable at his death, without preceding blindness. The defendant was named as the beneficiary of the certificate in case payments or benefits should accrue or become due to his heirs. The year of total blindness had expired, and measures for the collection of the amount of the certificate were being taken, but it had not been received, when Smith died. There is evidence which tends to show that several attempts to poison Smith had been made within a short time preceding his death, and that poison was administered to him two or more times on the day and in the evening before he died. The direct testimony connecting the defendant with the poisoning

was given by Mrs. Ida E. Scoville, a sister of the
defendant, who had been living with her several
months at the time of Smith's death.   She testified
that, for several months preceding that time, the
defendant had been paying attention to one of her
roomers, a saloon keeper, named Frank Bellaire;
that she spent much of her time, both day and night,
in his company, furnished him money with which to
start a saloon, and purchased articles of clothing for
him; that the money used for those purposes was from
the savings of Smith; that the defendant and Bellaire
habitually occupied the same room and bed at night;
and that the defendant had talked about the money
which was to be paid on Smith's certificate, and, about
two month's before Smith's death, had said that, when
she obtained the money, she intended to leave with
Bellaire.   Other witnesses also testified to the defend-
ant's fondness for Bellaire, and that they were fre-
quently out together at night.   Mrs. Scoville testified
further as to threats made by the defendant against
the life of her husband, and that she treated him
brutally; that about two weeks before Smith's death
she said that she had given him a dose; that the witness
was present at the time, and saw her place seventeen
or eighteen small pills in a piece of lemon pie which
Smith ate; that he complained that the pie was bitter,
and would have left a part of it, but the defendant fed
it to him; that she told the witness not to call a phy-
sician if he became sick, and left the house; that the
next morning the defendant prepared breakfast,
although not accustomed to do so; that oat meal was
served, and that the defendant stated she had placed
morphine in the portion which Smith ate; that in the
afternoon of the day preceding Smith's death, she
gave him something without telling the witness what
it was, but told her if Smith became sick not to send
for a physician, and then left the house with Bellaire;

that she did not return until about 11 o'clock that night, and that, at that time, she and Bellaire were intoxicated; that about midnight she filled a capsule from the contents of a box of "rough on rats," a preparation of which from seventy to ninety-five per cent. is shown to be arsenic, and gave it to Smith; that he had been sick since 7 o'clock that evening, and was in so serious a condition that several persons who came in during the evening advised sending for a physician; that, after the defendant's return, Bellaire started for a physician; that when the defendant learned of the fact, she sent for him to return, and herself followed, and overtook him, and induced him to return to the house; and that no physician was called until the next morning, after Smith had become unconscious, and but a short time before his death, which occurred at 9 o'clock. Mrs. Scoville's testimony respecting the sickness and death of Smith, and the defendant's conduct after her return in the evening, excepting as to the administering of the capsule, is corroborated by other witnesses. A post mortem examination was made, which showed that Smith's death was caused by arsenical poisoning. It appears to be the theory of the defendant that the poison was administered by Mrs. Scoville, and some evidence designed to show that such was the case was offered.

I. The appellant first complains that the district court refused to require the jurors to be kept together in charge of a proper officer during the trial, although requested to do so by the defendant, but permitted them to separate, although she did not consent, but objected to the separation. The abstract of the appellant appears to sustain her claim in regard to this matter, but is denied by the state, which claims that the record does not show what was done, if anything, respecting the separation of the

jury. This claim is based upon the following facts: The trial in the district court commenced on the fourteenth and ended on the thirtieth day of June, 1894. A bill of exceptions was signed by the trial judge, and filed, which contains the following: "That afterwards the trial of said cause was commenced, and all of the evidence offered, introduced, or used by each and all of the parties was taken down in shorthand by the said C. F. Irish, official reporter of said court, and all exhibits and documentary evidence offered, introduced or used on said trial were identified and referred to in said shorthand notes, which contain all the evidence offered, introduced or used, and proceedings had and done, on the trial of said case; that the offers of evidence, questions asked, objections made, rulings of the court, and exceptions by defendant to such rulings, are as stated and shown in said shorthand notes of the evidence, and are each and all correctly stated therein. Said shorthand notes of the evidence are entitled in the case, and were duly filed in said court and cause on the twenty-sixth day of June, 1894; and such shorthand notes of the evidence, together with the translation thereof, when duly made and certified to by said official shorthand reporter, are hereby made a part of this bill of exceptions, and a part of the record in this case." The trial judge had, on the twenty-third day of June, attached to the shorthand notes a certificate, which contained the following: "I hereby certify that the foregoing is the official report of the above-entitled case; that it contains, together with the documentary evidence therein referred to, all of the evidence that was offered or introduced on the trial of said case, and all of the objections and rulings made and exceptions taken, and the said official report in shorthand is hereby made part of the record in the above-entitled cause." The shorthand notes were not certified by the shorthand reporter, but he certified

his translation of the notes. It is claimed in behalf of the state, that the statement of the bill of exceptions we have set out, with the shorthand report of the trial, and the certificate of the trial judge, was not sufficient to make of record the proceedings in regard to the separation of the jury. We do not think this claim is well-founded. The bill of exceptions expressly states that the shorthand notes contained, not merely the evidence and rulings thereon, but the proceedings had and done on the trial, and that the rulings of the court and exceptions by the defendant were as stated in the notes. It is true the bill of exceptions, in reciting what is made a part of the record, refers to the notes of the evidence and the translation thereof when made, and not to rulings and proceedings not included in the evidence; but the bill of exceptions does not show any intention to exclude from the record evidence of such rulings and proceedings; and the certificate of the judge to the shorthand report made it a part of the record. We have no doubt that it was the intent of the judge to make the matter in question a part of the record, and that he accomplished what he intended. In reaching this conclusion, we do not give any weight to a certificate of the judge, which appears to have been signed on the twenty-third day of June, 1894, and attached by the shorthand reporter to the translation of his notes, more than a year later.

II. The record shows that at noon of the first day of the trial the defendant asked the court to place the jurors in the custody of a special bailiff, and to require them not to separate until a verdict was reached. The court thereupon placed the jurors in charge of a bailiff who was directed not to allow them to separate. At the close of the day, however, the court discontinued the order made at noon, and refused the request of the defendant that

the jurors be not allowed to separate during the trial, to which the defendant excepted. Thereafter they were allowed to separate at each adjournment of court. Section 4434 of the Code of 1873 is as follows: "The jurors sworn to try an indictment may at any time before the final submission of the cause to them, in the discretion of the court, be permitted to separate, except where one of the parties object thereto, or be kept together in charge of proper officers. The officers must be sworn to keep the jury together during the adjournment of the court, and to suffer no person to speak to or communicate with them on any subject connected with the trial, nor do so themselves, and to return them into court at the time to which it adjourns." That section was considered by this court in the late case of *State v. Garrity*, 98 Iowa, 101, and held to require that jurors, in cases to which it applies, be kept together during the trial, in the charge of proper officers, and not be permitted to separate if either the state or the defendant object to a separation. This case is triable on indictment, and is within the purview of the section quoted. It follows that the district court erred in refusing the request of the defendant, and in permitting the jurors to separate.

III.  The appellant complains that the state was permitted to show circumstances attending the shooting of Smith, in April, 1893. The purpose for which evidence of that character was received, was to show that the defendant was unlawfully connected with the shooting, and thus, that she entertained a desire or purpose to take the life of Smith, as bearing upon the question of her guilt of the crime charged in this case. For that purpose, the evidence was competent. The appellant does not deny, but admits, that acts, conduct, threats, declarations, and statements of a person accused of crime, which

occurred before it was committed, are admissible to show a motive or intent, but urges that, to be competent, the evidence must be direct, and not circumstantial. We are not aware that the authorities make the distinction urged, and do not think there is any sufficient ground upon which to base it. If a prior act or declaration may be proved as tending to show the guilt of a person accused of crime, we are of the opinion that it may be shown by any evidence competent to prove the act if it were directly in issue, whether such evidence be positive and direct, or circumstantial only.

IV. It appears that after the shooting of Smith, in the year 1893, a man named Talbott was accused of the crime, and had a preliminary examination before a justice of the peace, at which Smith testified. The defendant sought to show by several witnesses what Smith's testimony on that hearing was, but, on the objection of the state, their testimony was excluded. It is not shown what it would have proved had it been admitted, but we infer from the questions asked, that the defendant expected it to prove that Smith identified a person other than the defendant as the one who did the shooting. The state contends that his testimony was not admissible, because it was not given in an action between the same parties, in regard to the same subject-matter. No authorities are cited for the state in support of its claim. The objection of the state, that the rejected testimony did not relate to the subject-matter involved in this case, is not well taken, for the state, by the evidence which it introduced, made the shooting an issue in the case, and that was the matter concerning which Smith testified. It was said in *State v. O'Brien*, 81 Iowa, 90, to be "well settled that a person who heard and recollects the testimony of a deceased person, may testify in regard to it," and that the rule is applicable

in criminal cases. But does that rule apply to cases
in which one of the parties was not a party to the pro-
ceedings in which the testimony of the deceased wit-
ness was given, and where the person who was not a
party to that proceeding desires to use the testimony
against another who was a party thereto? None of the
authorities cited by appellant refer to a case of that
kind. The admissibility of the testimony of a deceased
witness depends in large measure upon the right and
opportunity which the person against whom it is
sought to be used, had to appear in the proceeding in
which it was given, and cross-examine the witness.
*Harrison v. Charton*, 42 Iowa, 572; 1 Greenleaf, Ev.
section 164. If that right existed and was exercised,
the evidence is ordinarily admissible against the party
who exercised it. In the preliminary examination in
question the state was a party, and, as we understand
the record, Smith was its witness. If that was the
case, the state not only had the opportunity to examine
him, but, in a sense, vouched for his credibility and
the truth of his statements. We are of the opinion
that, under these circumstances, his testimony was
competent evidence in this case against the state, and,
if we are right in our inferences as to facts, that the
court erred in rejecting proof of it. For the reason
that the arguments on this point are not satisfactory,
and that we do not understand that the question is
necessarily involved in the case, we refrain from
expressing an opinion as to the admissibility of the
testimony of Smith if it was in fact offered by Talbott.

V. The court charged the jury that, if it found
from the evidence, "beyond a reasonable doubt," that
Mrs. Scoville was an accomplice in causing the death
of Smith, the defendant could not be convicted
upon her testimony alone, but that it must be
corroborated by other evidence which would
tend to connect the defendant with the crime charged,

The effect of that portion of the charge was to instruct the jury that, unless Mrs. Scoville was shown, beyond a reasonable doubt, to be an accomplice in the murder of Smith, her testimony need not be corroborated. In that the court erred. It was only necessary to show that she was an accomplice by a preponderance of the evidence. See *State v. Sipult*, 81 Iowa, 41, and cases therein cited.

VI. Section 4559 of the code of 1873 provides that "a conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof." The court charged the jury that "the corroboration is not sufficient if it merely shows that the offense has been committed by some person," and omitted all reference to "the circumstances" of the offense. The omission was erroneous.

VII. The ninth paragraph of the charge authorized the jury to find the defendant guilty if it found from the evidence, beyond a reasonable doubt, that she "gave or was a party to the giving of a deadly poison to Michael Smith, of which he died," without requiring the jury to find that the poison was given feloniously, and in that respect it was erroneous.

VIII. The court charged the jury only with respect to the crime of murder in the first degree, and the appellant complains that it did not instruct the jury with respect to the lower degrees of homicide. Section 3849 of the Code of 1873 provides that "all murder which is perpetrated by means of poison * * * is murder in the first degree." The defendant was guilty of that offense, or was not guilty of any of which she could be convicted in this action.

*State v. Wells*, 61 Iowa, 632. Therefore it was not necessary for the court to instruct the jury in regard to any degree of homicide excepting that charged in the indictment. *State v. Cater*, 100 Iowa, 501, and cases therein cited.

IX. What we have said disposes of all the material questions likely to arise on another trial. For the errors pointed out, the judgment of the district court is REVERSED.