Fuld, J.
The defendant is a physician who had been employed by Sperry-Gyroscope Company located in Nassau County. The company had a contract with United Medical Service, Inc., covering its employees, and some of these employees or their wives were treated privately by the defendant after he left Sperry’s service. The People charged that, although the defendant treated them in a number of instances for ailments not covered by Sperry’s agreement Avitli United Medical, he filed statements of claims Avith the latter in which he recited that he had treated them for bursitis, an ailment Avhich was covered, and that, on the basis of such false claims — involving seven patients—he received $492 from United Medical under the Blue Shield portion *382 of the contract. This proof furnished the predicate for a conviction of grand larceny in the second degree (Penal Law, §§ 1290, 1296) and of seven counts of filing false insurance claims (Penal Law, § 1202, subd. I).[1]
The principal witnesses against the defendant were the patients whom he treated, and the primary question on this appeal revolves about whether those witnesses were the defendant’s accomplices and whether the trial court properly charged on this subject.
In general, the proof adduced was that a number of Sperry employees or their wives went to see the defendant because they were suffering from such varied complaints as nerves, a carbuncle on the foot or a pain in the stomach; that the defendant treated them for such ailments, which were not covered by Blue Shield; and that he thereafter filed statements of claims with United Medical Service in which he declared that those patients were suffering from bursitis and that he treated them therefor by “ needling [the] bursa ” on five or six occasions. The several patients in question testified that the defendant had handed them Blue Shield claim forms which they either signed in blank, or without reading; that they had not been suffering from bursitis ; that they had not been treated for such ailment; and that they had not received any injections or “ needling ” for bursitis. It appeared, in one or two instances, that, when the patient had paid the defendant for his services, the latter had submitted a claim for a larger amount and out of such sum had remitted to the patient the smaller amount which the latter had paid him. Testifying on his own behalf, the defendant readily admitted that he had filled out the forms and that he had been reimbursed by the United Medical Service under Blue Shield. He insisted, however, that he had throughout acted honestly and properly; that the patients who testified against him actually suffered from bursitis; and that he treated them for bursitis and gave them the injections described in the claims.
The jury, undoubtedly disbelieving the defendant, returned a verdict of guilt of second degree larceny and of filing false *383 insurance claims, and the trial court imposed a prison term on the grand larceny count but suspended its execution. On appeal, the Appellate Division, by a closely divided court, reversed and ordered a new trial, as we now know, solely on the law. The majority regarded as erroneous the trial court’s instructions with respect to the accomplice status of the patients who testified and the requirements of corroboration. It also characterized a sentence in the charge relating to ‘ ‘ the presumption of innocence ” as “ another error which appears to have been an inadvertence ”.
We put to one side this latter instruction concerning the presumption. In the first place, no objection or exception was taken to it, and, consequently, this item could not have been considered an error of law by the Appellate Division (Code Crim Pro., § 420-a; see People v. Cohen, 5 N Y 2d 282, 290); in the second place, what was said by the trial judge in connection with the presumption, when read with what immediately followed, may not be labeled ‘ ‘ misleading ’ ’; and, in the third place, any possible ambiguity was thoroughly cleared up, any error cured, by the court’s charging the defendant’s request on the subject.
This leads us to the question for decision, the correctness of the court’s charge on the subject of accomplices and corroboration. Before turning to it, however, we must say that, on the record before us, the patients who testified were, as a matter of law, not accomplices.
A witness may not be considered an accomplice unless the evidence establishes that he criminally participated with the defendant in the commission of the crime charged against the latter. (See, e.g., People v. Guadagno, 9 N Y 2d 768, affg. 11 A D 2d 1003; People v. Jackerson, 247 N. Y. 36, 42; People v. Richardson, 222 N. Y. 103, 113-114; People v. Pasquarello, 282 App. Div. 405, 407, affd. 306 N. Y. 759; People v. Zucker, 20 App. Div. 363, 365, affd. 154 N. Y. 770.) And, since it is in the nature of a defense, “The burden”, we have said, “rested on the defendant to show that the * * * [witness] was an accomplice ”. (People v. Richardson, 222 N. Y. 103, 114, supra; see, also, 7 Wigmore, Evidence [3d ed. 1940], pp. 341-343; 1 Underhill, Criminal Evidence [5th ed., 1956], p. 335.) The defendant fell far short of the burden imposed. As a matter of fact, it was the defendant’s position, both in his counsel’s opening and in *384 his testimony, that the patients who testified against him suffered from bursitis and that he actually treated them for that ailment and that, if any statement of claim was erroneous in its recital to that effect, the error was to be ascribed to the volume of cases he had and to forgetfulness or carelessness on his part or that of others who assisted him in filling out the forms. Beyond this, there is just no evidence to support the hypothesis that any of the patients had co-operated with the defendant or were assisting him in the perpetration of a fraud on the insurance company. According to the testimony of each and every one of them, they went to him for examination and treatment for particular ailments and did not know that he was guilty of misrepresentations in filling out the statements of claim which he sent to the insurer. It is true, as the defendant claims, that the district attorney did not ask the patient-witnesses whether they “knew * * * that a fraudulent claim was to be made ’ \ But it was not incumbent on the prosecutor to ask that question. In view of the position asserted by the defense in its opening, the matter was completely beside the point and irrelevant.
The only conclusion to be drawn from the evidence was that the patients acted in good faith, that they were not aware of the fact that the services rendered by the defendant were not covered by Blue Shield and that, if their medical bills were taken care of under Blue Shield, they truly believed that that was proper.
Despite the lack of evidence to support the defendant’s contention that the witnesses were accomplices, not only did counsel move at the end of the People’s case to dismiss the indictment on the ground that they were accomplices as a matter of law and that there was no evidence to corroborate their testimony, but the trial court left the issue—whether the patients were or were not accomplices — to the jury as one of fact.
As we have indicated, the trial judge would have been justified, on the present record, in charging that the witnesses were, as a matter of law, not accomplices. However, even adopting the trial judge’s thesis, we find no error in his instructions.
In the course of the charge proper, the judge told the jury: “You are either going to believe the defendant or you are not. Because if you believe the witnesses, then of course there can be no determination of being accomplices, and even if they were *385 to be determined accomplices, there is sufficient corroboration in the testimony of the defendant to sustain any such finding. So it boils down to whether to whom do you believe. Do you believe the defendant or do you believe the witnesses'? That is what it boils down to.” This instruction, although brief, was adequate in the light of the record. If, as the judge declared, the People’s witnesses were believed, they could not be deemed accomplices. However, as the judge added, even if they were to be considered accomplices, there was sufficient in the testimony of the defendant to “ corroborate ” the accomplice evidence, since the defendant acknowledged that he had signed and submitted the statements of claim (which actually contained misrepresentations) and that he had received the checks (to which neither he nor the patients were entitled) from the insurer under Blue Shield coverage. The defendant’s testimony tended to connect him with the commission of the crimes involved. Indeed, the corroboration relied upon by the prosecution was indisputable, consisting as it did of the false statements concededly signed by the defendant and the checks which he concededly received from the insurer. The trial judge was, therefore, under the facts of this case, warranted in telling the jurors that, if they disbelieved the defendant and yet found that the witnesses were accomplices, there was present “ sufficient corroboration ” to sustain a verdict of guilt.
In addition, in connection with defense counsel’s requests, the trial court charged the jury that “ a conviction cannot be had upon the testimony of an accomplice unless it is corroborated by such other evidence as points to the connection of the defendant with the commission of the crime ”, and that, “ if you find that [certain patient-witnesses] * * * participated in the general scheme and plan which is the basis for the Indictment, they are accomplices as a matter of law.”[2]
The instructions given, although they might have been phrased more clearly, complied with the law’s demands. The trial court fairly advised the jurors that there could not be a conviction *386 solely on the testimony of an accomplice, that there had to he other evidence connecting the defendant with the commission of the crime and that, if the witnesses against the defendant “ participated ” with him in the scheme and plan underlying the indictment, they were “ accomplices as a matter of law
It is, therefore, our conclusion that the trial judge did not commit any error of law in charging the jury on the subject of accomplices or on any other matter and that the Appellate Division’s reversal on the law was itself erroneous. Since, however, that court did not pass upon the facts, we are directed to remit the case to it for determination on such questions (Code Crim. Pro., § 543-b; see People v. Cohen, 5 N Y 2d 282, 292, supra).
The order appealed from should be reversed and the case remitted to the Appellate Division to pass upon questions of fact.

. In 1959, we decided, on appeal from the Appellate Division’s order overruling a demurrer for the grand larceny count, that the People were privileged — upon the authority of People v. Cox (286 N. Y. 137) —to accumulate the series of taking (each of which was less than $100) and charge the defendant with grand larceny (5 N Y 2d 396).

. We simply note that the court, at the district attorney's request, and with the acquiescence of defense counsel, added this further instruction on the subject: “ before they can find that any witness for the People was an accomplice of the defendant, * * * they must find that he or she of these witnesses knew that the defendant was making or intending to make a false claim as to the treatments that he gave them.”