[Crim. No. 18931. Second Dist., Div. One. May 27, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT LEWIS JOHNSON, Defendant and Appellant.

## COUNSEL

Donald F. Roeschke, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Howard J. Schwab, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**THOMPSON, J.**—This is an appeal from a conviction after jury trial of first degree murder, attempted robbery, burglary, and conspiracy to commit burglary and robbery. We modify the judgment and affirm it as modified.

Viewed as it must be in the light most favorable to the judgment, the record discloses the following. On March 23, 1969, between 4 and 5 p.m., appellant discussed the possibility of committing a robbery with Messrs. Francioni, Hackler, Barnes, Hofmann, Miss Patricia Lambert, and a girl identified as "Beckie." Appellant mentioned "an easy hit at a photographer." Miss Lambert had posed for Jack Richardson, a professional photographer, the preceding September. She drew a sketch of the interior of Richardson's apartment. Appellant, Hofmann, Barnes, Francioni, and Hackler left for the Richardson apartment, Francioni and Hackler in a Dodge Polara and appellant and the others in another vehicle. Appellant instructed the others to go to the apartment and once there to shake the curtains to signal that it would be all right for him to come up.

On arrival at the apartment building, appellant told the others to check the area. He asked Francioni and Hofmann if they had their guns. They indicated they did. Hofmann, Francioni, and Hackler went to the Richardson apartment. Pretending to be policemen, they forced their way in. Francioni demanded Richardson's wallet. When Richardson replied,

"What do you want?" he was pistol-whipped, beaten, and kicked. In the ensuing struggle, Hackler was shot in the stomach and Richardson was shot and killed.

Melvin Andres, who lived in the same house with appellant, Miss Lambert, and Beckie, was present there on March 23 when Hofmann, Barnes, Hackler, and Francioni came to the residence. He left soon after they arrived and before the others began their conversation planning the Richardson robbery. Andres returned to the house at about 1:15 the following morning. Appellant said "that everything was f-----d up." Andres asked what he meant and appellant replied, "Glenn got shot." Andres asked, "How?" Appellant responded that "they" went after a photographer in Hollywood. Andres asked if the photographer had been shot and whether he was alive or dead. Appellant replied that the victim had been shot and that he did not know if he were alive. Appellant said that he had sent Barnes out to bury the gun.

Andres left the house and returned at approximately 6:30 a.m. Barnes appeared shortly thereafter. Barnes told appellant that "they" had dropped Hackler off in Santa Ana to seek help for his gunshot wound, telling Hackler to inform the police that he had been shot while being robbed. Barnes said that he had "dropped the Dodge at the Holiday Inn Motel" and that it was bloodstained from Hackler's wound. Appellant told Barnes to get rid of the car by taking it to San Diego and burning it if necessary.

Andres drove Barnes to the Holiday Inn Motel where Barnes entered the Dodge. Andres followed Barnes about 100 miles south on the San Diego Freeway to a beach 3 to 5 miles south of Solano. There Barnes took the license plates off the car, doused the auto with gasoline, and set it on fire. He threw the license plates away as Andres drove him back to Los Angeles.

Upon returning to appellant's house, Andres observed a .45 caliber pistol apparently bloodstained. Francioni, who was also present, said that he had heard that the police were looking for a suspect who matched his description, including "long, curly, kinky hair." Appellant told Francioni to get a haircut. Hofmann was also present. As he and appellant left, Hofmann said that they were going to arrange an alibi.

A few days later, appellant told Andres, "Those guys missed $1800 in Richardson's apartment." Andres told appellant to stop worrying about the money and start thinking about getting out of town. Appellant replied that the neighborhood was "hot" and that he should not be around in it.

After a jury trial, appellant was adjudged guilty of the first degree murder of Richardson, the attempted robbery of the victim, the burglary of the

Richardson apartment, and of conspiracy to commit burglary and robbery. After a jury deadlock in the penalty phase of the trial, he was sentenced to life imprisonment on the murder count and to state prison on the other counts to run concurrently with the life sentence. Execution of sentence on the latter counts was stayed pending service of the sentence of life imprisonment.

On appeal, appellant contends: (1) the trial court erroneously instructed on the burden of proof of establishing that Andres was or was not an accomplice; and (2) the conviction must be reversed for insufficiency of evidence corroborating accomplice testimony. He also contends, and respondent concedes, that the judgment must be modified to add that the stay of execution on counts II, III, and V shall become permanent upon the completion of service of the term to which appellant was sentenced on count I (murder).[1]

### Burden of Proof of Accomplice Status

 The incriminating evidence against appellant consisted principally of testimony of Hackler, Miss Lambert, Hofmann, Francioni, and Andres. The trial court instructed the jury that Hackler, Miss Lambert, Hofmann, and Francioni were accomplices as a matter of law and that their testimony was insufficient to convict appellant unless it were corroborated. The only potential corroboration consisted of testimony by Andres. There was in turn conflicting evidence whether or not Andres was himself an accomplice. The trial judge squarely met the problem by instructing on the distinction between an accessory after the fact and an accomplice (see *People* v. *Wolden,* 255 Cal.App.2d 798, 804 [63 Cal.Rptr. 467]), and informing the jury that it must decide whether Andres was an accomplice or merely an accessory. The court defined the burden of proof on the issue of Andres' status as follows: "You are instructed that at the outset of your deliberations, you must presume that ANDRES was not an accomplice; the defense has the burden of proof insofar as raising a reasonable doubt on this issue only. This means that you must consider all of the evidence to determine if it causes you to have a doubt that ANDRES was not an accomplice. If you have such a doubt, you must then determine if it amounts to a reasonable doubt, as has been defined. If you have such a reasonable doubt, then you cannot use ANDRES' testimony as possible corroboration, and you should vote for acquittal. If you find that the defense has failed to raise a reasonable doubt as to this issue, and you find that ANDRES was an accessory only, then you may consider his testimony in deciding whether or not the testimony of an accomplice, or accomplices, has been corroborated."

---

[1]We accept the concession for the purpose of this appeal.

Appellant contends that the instruction as given is erroneous and that the trial court should have instructed as requested by appellant, that the burden of proof was on the prosecution to establish that Andres was not an accomplice. ■ Counsels' briefs indicate that their research has disclosed no California decision dealing directly with the problem here presented. Our independent research has been similarly barren. Decisions of other jurisdictions, however, appear uniformly to place the burden on the defendant to establish that a witness is an accomplice thus triggering the need for corroboration of his testimony.[2] Secondary authority states the same rule. (7 Wigmore, Evidence (3d ed.) § 2060, "The burden of proving the witness to be an accomplice is of course upon the party alleging it for the purpose of invoking the rule, namely, upon the defendant."; Note 19 A.L.R.2d 1352, 1358, "In order for corroboration of the testimony of a witness to be required as a condition of conviction by a jury, the jury must be reasonably satisfied by a preponderance of the evidence that the witness was an accomplice.")

What authority there is in California indicates that the rule in this state is the same as elsewhere. Evidence Code section 520 states "The party claiming that a person is guilty of a crime . . . has the burden of proof on that issue." Where, as here, a defendant asserts that a witness is an accomplice, he necessarily claims that the witness is guilty of a crime (Pen. Code, § 1111). We conclude therefore that the burden of proof is on the defendant to establish that a witness is an accomplice. ■ The trial court correctly instructed the jury to that effect.[3]

### Sufficiency of Corroborating Evidence

■ Appellant contends that there is not sufficient evidence to corroborate the accomplice testimony even if Andres is held not to be an accomplice. The record is to the contrary. Corroborating evidence is sufficient if it tends to connect the defendant with the crime in such a way as may reasonably satisfy the jury that the accomplices who testified against the defendant were telling the truth. (People v. Sanchez, 232 Cal.App.2d 812, 816

[2]See (Alabama) Childress v. State, 86 Ala. 77 [5 So. 775, 778, 779]; Ross v. State, 74 Ala. 532, 537 (Dec. Term 1883); (Iowa) State v. Trodgen, 258 Iowa 574 [139 N.W.2d 393, 395]; State v. Gates, 197 Iowa 777 [197 N.W. 908, 910]; State v. Smith, 102 Iowa 656 [72 N.W. 279, 282]; (Oregon) State v. Wong Si Sam, 63 Ore. 266 [127 P. 683, 686]; (Washington) State v. Bixby, 27 Wn.2d 144 [177 P.2d 689]; (New York) People v. Rossi, 11 N.Y.2d 379 [230 N.Y.S.2d 7, 183 N.E.2d 895].

[3]Since determination of the case at bench does not turn on the issue, we have not considered whether the defendant's burden is that of raising a reasonable doubt as instructed by the trial court or that of establishing accomplice status by a preponderance of the evidence.

[43 Cal.Rptr. 131], and cases there cited.) Here that corroboration is found in the testimony of Andres. Appellant told Andres about the robbery and shooting and that the gun had been buried. Appellant left with Hofmann to set up an alibi. He told Andres, "Those guys missed $1800 in Richardson's apartment" and he showed a consciousness of guilt by stating that the neighborhood was "hot" and he should not be there. The sum of that evidence is considerably more than that which is the minimum for corroboration.

### *Adequacy of Representation on Appeal*

■ After appellant's opening brief was filed by appointed counsel, appellant communicated with this court claiming that counsel's representation on appeal was inadequate and appending a memorandum by his "next of friend" stating issues not raised by counsel which appellant contends should have been argued. Appellant sought an order discharging counsel and permitting him to proceed on appeal in pro. per with the help of "next of friend." We denied that request and our Supreme Court refused appellant's petition for hearing to review our denial. Because we are cognizant of the probability that appellant will seek post-appellate review, we note that in accord with our usual practice we have examined the record to determine whether it raises arguable issues not discussed by counsel. We have found none. The purported issues noted by appellant's "next of friend" would be treated as frivolous if raised by counsel. "Next of friend" contends that the indictment is void because it is unsupported by evidence before the grand jury and is based solely on prior testimony before the same grand jurors who returned an earlier dismissed indictment. The record, however, discloses testimony resulting in the second indictment more than adequate for the purpose. ■ "Next of friend" contends that the case must be reversed because while appellant entered a plea of not guilty to the first and subsequently dismissed indictment, he did not enter a plea to the indictment on which he was actually prosecuted. The argument ignores the fact that defense counsel at trial stipulated that he had no objection to filing what was in effect an amended indictment, and that by proceeding to trial as if a plea of not guilty had been entered, appellant waived the statutory requirement of a plea to the amended accusatory pleading. (Witkin, Cal. Criminal Procedure (1963 ed.) § 211, and cases there cited.) ■ Lastly, "next of friend" argues that the court erred in not instructing on the "included offenses" of second degree murder and manslaughter. In so doing he ignores the fact that at trial defense counsel stipulated that the only issues to be tendered to the jury on count I concerned guilt or innocence of first degree murder.

## Disposition

The judgment is modified by adding "The stay of execution of the sentence on Counts II, III, and V to become permanent upon the completion of the sentence on Count I." The judgment as modified is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied on June 25, 1971, and the following opinion was then rendered:

**THE COURT.**—On May 27, 1971, we filed our decision modifying and affirming the judgment in the case at bench. Appellant has filed a petition for rehearing prepared by Mervin Carlos McKinney, "next of friend." The petition raises no appropriate ground for rehearing and is denied.

Beginning on page 3 of the petition for rehearing (denominated "motion"), there is a threat to sue the judges of this court for monetary damages under the civil rights act unless they comply with the appellant's demand that a rehearing be granted. On page 6, we are accused of "moving heaven and hell in trying to cover up and protect lower court personnel," and of having "committed a dishonorable act" in upholding the actions of the trial judge.

It seems clear that if the petition for rehearing prepared by appellant's "next of friend" and filed by him had been prepared and filed by an attorney, that attorney would have been subjected to severe discipline. ■ It is highly improper advocacy to seek an objective by a threat to the court. It is equally improper to mount a personal attack upon the members of the court where no reason exists for it. ■ Nothing in the case law reviewed by us indicates that a "next of friend" acting to protect the rights of illiterates and uneducated prisoners in lieu of other means of representation is permitted to engage in conduct which would be impermissible if performed by a lawyer. *In re Harrell*, 2 Cal.3d 675, 688 [87 Cal.Rptr. 504, 470 P.2d 640], states: "As we have suggested . . . it is the rights of illiterate and uneducated prisoners which are protected by *Johnson*—not the assumed prerogatives of those inmates who have, for one reason or another, set themselves up as legal consultants."

We make note of the misconduct of "next of friend" with the hope that it will not occur in the future and for such other action as may be deemed proper by appropriate authorities.

Appellant's petition for a hearing by the Supreme Court was denied July 21, 1971.