[Crim. No. 19877. Feb. 28, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT CHARLES BELTON, Defendant and Appellant.

**COUNSEL**

Herbert F. Blanck, under appointment by the Supreme Court, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Edward T. Fogel, Jr., and Carol Wendelin Pollack, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BIRD, C. J.**—Appellant, Robert Charles Belton, was found guilty in a court trial of violating Penal Code section 246 (discharging a firearm at an inhabited dwelling house).[1] Appellant contends that his motion for a judgment of acquittal pursuant to section 1118[2] should have been granted.

---

[1]Penal Code section 246 provided at all times here pertinent: "Any person who shall maliciously and wilfully discharge a firearm at an inhabited dwelling house or occupied building, is guilty of a felony, and upon conviction shall be punished by imprisonment in the state prison for not less than one or more than five years or by imprisonment in the county jail not exceeding one year."

Unless otherwise indicated, all statutory references are to the Penal Code.

[2]Section 1118 provides in pertinent part: "In a case tried by the court without a jury, . . . the court on motion of the defendant or on its own motion shall order the entry of a

## I

By an information filed May 5, 1975, appellant was charged with a violation of section 246. He was arraigned and pleaded not guilty. Appellant waived his right to a jury trial and was tried by a judge sitting without a jury. On October 24, 1975, the trial court found him guilty as charged.

In its case-in-chief, the prosecution produced testimony which showed that a shotgun had been fired at the residence of Sophronia Johnson on February 11, 1975. In addition, the prosecution called Wardell Fouse, the 16-year-old stepson of appellant. Fouse testified that neither he nor his stepfather had anything to do with the shooting. The minor acknowledged being questioned by Deputy Sheriff Michael Lugos on February 12, 1975, but denied having admitted to Lugos that he had fired a shotgun at the Johnson house from a car driven by appellant.

To contradict Fouse's testimony, the prosecution called Lugos. Asked about his interview with Fouse on February 12th, Lugos testified that Fouse first denied but later admitted firing a weapon at the Johnson house. According to Lugos, Fouse stated that after losing a fight to one of Sophronia Johnson's sons, he obtained a shotgun, had his stepfather drive him by the Johnson residence, and discharged the weapon in the direction of the home. This testimony by Lugos constituted the only evidence presented during the case-in-chief connecting appellant with the crime.

Following this testimony, the prosecution rested. Appellant then moved for a judgment of acquittal pursuant to section 1118. The trial court summarily denied the motion. The trial proceeded, and appellant was found guilty.

## II

On appeal, appellant contends that the trial court should have granted the motion to acquit because the evidence before the court at the time the motion was made was insufficient to convict. When the prosecution rested, the only evidence linking appellant to the crime was the

judgment of acquittal . . . after the evidence of the prosecution has been closed if the court, upon weighing the evidence then before it, finds the defendant not guilty . . . ."

extrajudicial statement of Fouse to Deputy Lugos. Appellant asserts that this statement was the testimony of an accomplice and that section 1111 requires corroboration of accomplice testimony before a conviction may result.[3] Since there was no corroborating evidence presented during the prosecution's case-in-chief, appellant argues that the trial court erred in denying his motion to acquit pursuant to section 1118. In assessing this contention, it is necessary to review the fundamental concepts underlying the acquittal provisions of that section.

Two of the most basic premises of our criminal justice system—the presumption of innocence and the duty of the prosecution to prove guilt beyond a reasonable doubt—are embodied in section 1096 of the Penal Code: "A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquital . . . ." "These significant words express a cardinal rule of Anglo-American criminal jurisprudence. The presumption, intended originally to ameliorate the severity of the early English common law (5 A.L.R.3d 76), serves not to protect the guilty but to prevent conviction of the innocent. (*People* v. *Hill,* 77 Cal.App.2d 287, 293 [175 P.2d 45], and cases cited; Witkin, Cal. Criminal Procedure (1963) §339, p. 332; 14 Cal.Jur.2d 405.) It has been described as a fundamental right and an essential element of due process of law. [Citation.] It is the capstone in the protective arch of a citizen's rights when accused of crime." (*People* v. *Morris* (1968) 260 Cal.App.2d 848, 850 [67 Cal.Rptr. 566].)

Implicit in these principles is the duty of the prosecution to prove each element of the crime charged. "One of the greatest safeguards for the individual under our system of criminal justice is the requirement that *the prosecution must establish a prima facie case by its own evidence before the defendant may be put to his defense.*" (*Cephus* v. *United States* (D.C.Cir. 1963) 324 F.2d 893, 895, italics added; see also *United States* v. *Sutton* (D.C.Cir. 1969) 426 F.2d 1202, 1210-1211.)

Prior to the passage of present sections 1118 and 1118.1,[4] California had no procedural method by which the defendant could move for acquittal on the ground that the prosecution had failed to prove a prima facie case at the close of the prosecution's case-in-chief. Limited

---

[3]Section 1111 provides in pertinent part: "A conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

[4]Section 1118.1 provides for acquittal motions when the trial is by jury.

protection for the defendant was provided by section 1385 which permitted the court on its own motion or on the motion of the prosecution to dismiss an action in the furtherance of justice. However, this section did not "confer upon the *defendant* the privilege of moving to dismiss . . . ." (*People* v. *Shaffer* (1960) 182 Cal.App.2d 39, 44 [5 Cal.Rptr. 844], italics added.)

In enacting present sections 1118 and 1118.1, the Legislature provided the defendant with the benefit of a procedure by which to move for acquittal when the prosecution fails to prove a prima facie case. The bill digest prepared by the Senate Judiciary Committee on the legislation proposing these sections recognized the dilemma a defendant faced without a procedure by which to test the sufficiency of the prosecution's evidence in its case-in-chief. The bill digest stated in pertinent part, "Under present California law, a defendant is not permitted to argue that the prosecution has not made a prima facie case. His alternatives are (1) to rest at the close of the prosecution's case, gambling that the court shares his opinion, or (2) to proceed with presenting his defense. Proponents acknowledge that there will be very few cases wherein the prosecution will not present a triable issue, however state that *it is in these cases that defendant should have the right to terminate the matter at the close of the prosecution's evidence.*"[5] (Italics added.)

In giving substance to this right, the Legislature provided that a motion to acquit could be made by either the defendant or the trial court, without any requirement that the motion be made in a particular form. The Attorney General nevertheless contends that appellant's motion to acquit made pursuant to section 1118 should have included a statement of specific grounds.[6] However, to so construe this section would force a defendant to face the same kind of dilemma from which the Legislature sought to extricate defendants. In effect, a defendant would be forced to choose between: (1) specifying the defects in the prosecution's case, thereby affording the prosecutor an opportunity to seek to reopen the case in order to cure such defects; (2) making no motion and resting, thereby sacrificing his right to present a defense for fear that later evidence might cure the defects in the prosecution's case; or (3) making no motion, thereby waiving the right to challenge the prosecution's case-in-chief, and proceeding to present a defense. Forcing a defendant

---

[5]Bill digest prepared by the Senate Judiciary Committee for the April 13, 1967, hearing on Senate Bill No. 312, 1967 Regular Session.

[6]In making the motion, appellant's trial counsel stated that he did not "think that we have sufficient evidence here to convict Mr. Belton of any crime . . . ."

to elect among these alternatives would deny him the intended protection of the section. Further, to require a defendant to state specific grounds in support of the motion for acquittal would place the burden upon him to point out to the prosecutor, as well as to the court, the gaps in the prosecution's case. Such a requirement would come perilously close to compelling a defendant to aid in his own prosecution and would lessen the prosecutor's burden to prove each and every element of the case beyond a reasonable doubt.[7]

The Attorney General's analogy to cases interpreting Code of Civil Procedure section 581c[8] is inapposite. Those cases require a defendant in a civil action to specify the particular grounds upon which he is relying in making a motion for nonsuit. (*Timmsen* v. *Forest E. Olson, Inc.* (1970) 6 Cal.App.3d 860, 868 [86 Cal.Rptr. 359]; *Inderbitzen* v. *Lane Hospital* (1932) 124 Cal.App. 462, 465 [12 P.2d 744, 13 P.2d 905].) However, such an analogy fails to give proper weight to the distinctions between civil and criminal actions—distinctions which the Legislature recognized by utilizing different language in providing for motions for acquittal and motions for nonsuit. Most notably, section 1118 authorizes the trial court to order a judgment of acquittal *on its own motion* in a criminal case, whereas a nonsuit cannot be had in a civil case unless the defendant initiates the motion (4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 358, p. 3156). The fundamental rights at stake in a criminal action are deemed so important that the Legislature has chosen to give the trial court the authority, independent of any action by the defendant, to acquit should the prosecution fail to meet its burden during the case-in-chief.

To decide the proper interpretation of a rule of criminal procedure by reliance upon rules of civil procedure would be to ignore the underlying rights of the presumption of innocence and proof beyond a reasonable doubt which the Legislature sought to protect in enacting section 1118. Nothing in the history of this section supports the contention that the

[7]In reviewing section 1118, this court is cognizant of its resemblance to rule 29 of the Federal Rules of Criminal Procedure. Federal courts, in interpreting rule 29, have held that the grounds of a motion made pursuant to the rule need not be specifically stated. (*Huff* v. *United States* (5th Cir. 1959) 273 F.2d 56, 60; see also *United States* v. *Jones* (7th Cir. 1949) 174 F.2d 746, 748.)

[8]Code of Civil Procedure section 581c reads: "After the plaintiff has completed his opening statement, or the presentation of his evidence in a trial by jury, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a judgment of nonsuit.

"If the motion is granted, unless the court in its order for judgment otherwise specifies, such judgment of nonsuit operates as an adjudication upon the merits."

Legislature intended a defendant to be deprived of such protection unless he first specified the defects in the prosecution's case-in-chief.

Having determined that appellant's motion for acquittal was made in proper form, this court must now consider whether that motion should have been granted. Appellant contends that the only evidence presented against him during the prosecution's case-in-chief was the uncorroborated testimony of an accomplice and that since under section 1111 such evidence is insufficient to convict, his motion to acquit was improperly denied. Before this court may consider the validity of this contention, it must be determined whether or not section 1111 is applicable here. That section's corroboration requirements come into play only when "the *testimony* of an *accomplice*" (italics added) constitutes the basis for a conviction. Thus, section 1111's applicability to the present case turns on whether or not Fouse was an accomplice and if so, whether or not his extrajudicial statement incriminating appellant constituted "testimony" within the meaning of that section.

In order to establish that an individual is an accomplice, a defendant bears the burden of both producing evidence raising that issue[9] and of proving the accomplice status by a preponderence of the evidence. (*People* v. *Tewksbury, supra,* 15 Cal.3d at pp. 963, 968.) "The burden of producing evidence on an issue means the liability to an adverse ruling . . . *if evidence on the issue has not been produced.*" (McCormick on Evidence (Cleary rev. ed. 1972) § 336, p. 784, italics added; see Evid. Code, §§ 110, 550.) In the case before this court, evidence was produced during the case-in-chief that Fouse was an accomplice. His extrajudicial statement was evidence that he had perpetrated a crime, aided and abetted by appellant. Since perpetrators are accomplices within the meaning of section 1111[10] (*People* v. *Gordon* (1973) 10 Cal.3d 460, 468 [110 Cal.Rptr. 906, 516 P.2d 298]; see *People* v. *Tewksbury, supra,* 15 Cal.3d at p. 960), Fouse was an accomplice according to the prosecution's own evidence and theory of the crime.[11] The fact that the prosecutor introduced this evidence relieved the appellant of his initial burden of producing evidence on the issue. (See Evid. Code, § 604.)

[9]"[I]t is uniformly held that the defense initially bears the burden of producing evidence to raise the accomplice issue (Evid. Code, § 550) and that in the absence of *any* such proof the witness is treated as not being an accomplice. [Citations.]" (*People* v. *Tewksbury* (1976) 15 Cal.3d 953, 963 [127 Cal.Rptr. 135, 544 P.2d 1335], italics added.) ·

[10]Under section 1111, an accomplice is "defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given."

[11]In his final argument to the court, the prosecutor characterized Fouse's extrajudicial statement as the "confession of an accomplice . . . ."

Once this burden of producing evidence has been met, "the burden of proof is on the defendant to establish that a witness is an accomplice." (*People* v. *Johnson* (1971) 18 Cal.App.3d 458, 464 [95 Cal.Rptr. 316, 96 Cal.Rptr. 695].) ■ The burden of proving a fact is "satisfied when the requisite evidence has been introduced or the persuasion accomplished, and . . . it is of no consequence whether the evidence was introduced by one party rather than the other, . . . or whether the persuasion was due to the evidence or to the argument of either counsel . . . ." (Morgan, Basic Problems of State and Federal Evidence (Weinstein rev. ed. 1976) p. 14.) In the present case, to have denied appellant's motion to acquit, the trial court must have disbelieved Fouse's testimony that neither he nor appellant participated in the crime and believed Fouse's extrajudicial statement. That statement, presented during the testimony of Deputy Lugos, was sufficient to establish the accomplice status of Fouse by a preponderance of the evidence.

However, before section 1111 may be applied, it must also be decided whether Fouse's extrajudicial statement constituted "testimony," as the term is used in that section. In order to determine the proper interpretation of the word, this court must look not only to its literal meaning but also to the Legislature's intent in enacting section 1111.

■ "Testimony" is generally described in both statutory and decisional law as oral statements made by a person under oath in a court proceeding. The term "testify" is referred to in identical language in the Penal Code, the Code of Civil Procedure, and the Civil Code: ". . . every mode of oral statement, under oath or affirmation, is embraced by the term 'testify,' . . ."[12] (Pen. Code, § 7; Code Civ. Proc., § 17; Civ. Code, § 14; see also Evid. Code, § 710 [oath or affirmation required before witness may testify].) Decisional law of this state has interpreted the word "testimony" in similar fashion. Testimony, "strictly speaking, means only that evidence which comes from living witnesses who testify orally." (*Mann* v. *Higgins* (1890) 83 Cal. 66, 69 [23 P. 206].) "All evidence is not testimony. Testimony is limited to that sort of evidence which is given by witnesses speaking under oath or affirmation [citation] . . . ." (*Stern* v. *Superior Court* (1947) 78 Cal.App.2d 9, 13 [177 P.2d 308]; see also *People* v. *Gilbert* (1963) 217 Cal.App.2d 662, 666 [31 Cal.Rptr. 920].)

■ Although section 1111 speaks in terms of "testimony," it is instructive to note that courts of this state have focused on the *source* of

[12]This reference has been contained in each of these sections since their original enactment in 1872, the same year in which section 1111 was initially codified. (1872 Pen. Code, § 7; 1872 Code Civ. Proc., § 17; 1872 Civ. Code, § 14; 1872 Pen. Code, § 1111.)

the statements rather than their evidentiary form in articulating the legislative intent behind that section. "The rationale for requiring corroboration of an accomplice is that the hope of immunity or clemency in return for testimony which would help to convict another makes the accomplice's testimony suspect, or the accomplice might have many other self-serving motives that could influence his credibility. [Citation.]" (*People* v. *Marshall* (1969) 273 Cal.App.2d 423, 427 [78 Cal.Rptr. 16].) For these reasons, "the evidence of an accomplice should be viewed with care, caution and suspicion . . . ." (*People* v. *Wallin* (1948) 32 Cal.2d 803, 808 [197 P.2d 734].) To prevent convictions from being based solely upon evidence from such inherently untrustworthy sources, the Legislature enacted section 1111 to require corroboration whenever an accomplice provided the evidence upon which a conviction was sought.

In the present case, the fact that the accomplice's incriminating out-of-court statement was not part of his testimony at trial does not in any way lessen the danger that such a statement "comes from a tainted source and is often given in the hope or expectation of leniency or immunity." (*Ibid.*) It is the source of the statement that renders it suspect. Thus, the reasons for the requirement of corroboration would seem to be equally present whether the accomplice's statements were made in court or out of court. However, when section 1111 was enacted in 1872, the Legislature had no reason to take into account anything other than an accomplice's in-court statements. At that time, there was no means by which a prior inconsistent statement such as Fouse's could have been admitted to prove the truth of the matter stated. Thus, in 1872, the word "testimony" was the term most precisely suited to expressing the Legislature's intent that a conviction must be based on more than just the inherently suspect statements of an accomplice incriminating the defendant.

It was not until 1967, when section 1235 came into effect as part of the newly enacted Evidence Code, that evidence of a witness' prior inconsistent out-of-court statement became admissible other than for the purpose of attacking the witness' credibility. (*Albert* v. *McKay & Co.* (1917) 174 Cal. 451 [163 P. 666].) If the case before this court had arisen prior to 1967, evidence that Fouse had made prior statements incriminating defendant as a participant in the crime charged against defendant would have been admissible solely to impeach the exculpatory testimony of Fouse. Since these statements would not have been admissible to prove the truth of the matter stated, there would have been no evidence in the prosecution's case-in-chief capable of sustaining the conviction of defend-

ant. When it enacted section 1111 in 1872, the Legislature could not have envisioned the admissibility of evidence of an accomplice's out-of-court statement for any purpose other than to attack the credibility of the accomplice as a witness. However, when the Legislature did enlarge the purposes for which such evidence could be admitted with the enactment of Evidence Code section 1235, it neglected, through apparent oversight, to substitute a more inclusive word for the term "testimony" so that section 1111 might clearly be applicable to this new form of accomplice evidence.

This court is thus called upon to construe the term "testimony" so as to give full effect to the legislative intent of section 1111, thereby avoiding the anomalous situation that would be created by a literal reading of that term. " 'The mere literal construction of a section in a statute ought not to prevail if it is opposed to the intention of the legislature apparent by the statute; and if the words are sufficiently flexible to admit of some other construction it is to be adopted to effectuate that intention. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.' " (*In re Haines* (1925) 195 Cal. 605, 613 [234 P. 883].)

In enacting section 1111, the Legislature intended to eliminate the danger of a defendant being convicted solely upon the suspect, untrustworthy and unreliable evidence coming from an accomplice, who is likely to have self-serving motives that affect his credibility. If an accomplice's testimony under oath is suspect, unreliable and untrustworthy, evidence of his prior inconsistent statements, not made under oath or in the presence of the trier of fact, must be deemed even more suspect, untrustworthy and unreliable.

To conclude that such evidence does not fall within the ambit of section 1111 merely because an out-of-court statement is not, strictly speaking, synonymous with "testimony" would be to thwart the purposes of that section. Accordingly, applying the basic principle that legislative intent prevails over literal construction, this court concludes that Fouse's prior inconsistent statement constituted "testimony," as the term is used in section 1111.

■ Since Fouse was an accomplice and his prior inconsistent statement was testimony, the prosecution had a duty pursuant to the requirements of section 1111 to corroborate his testimony in order for there to be sufficient evidence to convict. By not producing any

corroboration during its case-in-chief, the prosecution failed to present a prima facie case. Appellant's motion to acquit was therefore improperly denied by the trial court, and a reversal of the judgment entered below is required. However, a general reversal is not adequate, since a retrial would result. (Pen. Code, § 1262.) Such a retrial would allow the prosecution to accomplish by indirection that which this court holds it cannot do directly. To be consistent with the Legislature's intent in enacting section 1118, this court cannot afford the prosecution, having once failed to prove a prima facie case, a second opportunity to present the evidence against a defendant.[13] When appellant moved pursuant to section 1118 in the present case, he was entitled to a judgment of acquittal.

Therefore, the judgment entered below is reversed, and the trial court is directed to enter a judgment of acquittal.

Tobriner, J., Mosk, J., Richardson, J., and Manuel, J., concurred.

**JEFFERSON, J.**[*]—I concur in the result reached by the majority.

I am in accord with the majority's holding with respect to the interpretation of Penal Code section 1118. I agree that that section permits a defendant to move for a judgment of acquittal at the conclusion of the prosecution's case in chief without setting forth any specification of reasons for the motion, and that the trial court must grant such a motion if the prosecution's evidence is insufficient to sustain defendant's conviction.

I also agree with the majority's holding that Penal Code section 1111 is applicable to the situation presented in the case at bench. The majority takes the view that since Wardell Fouse, who testified for the prosecution, was established to be an accomplice of defendant, the prior unsworn inconsistent statements of Fouse which implicated defendant as an aider and abettor of Fouse should be deemed to constitute the *testimony* of an

---

[13]In a federal criminal proceeding, the United States Supreme Court held that the double jeopardy clause of the Fifth Amendment prohibits a second trial following reversal of a conviction in the first trial for lack of sufficient evidence to sustain the jury's verdict: "The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." (*Burks* v. *United States* (1978) 437 U.S. 1, 11 [57 L.Ed.2d 1, 9, 98 S.Ct. 2141, 2147].) The court concluded that "the only 'just' remedy available . . . is the direction of a judgment of acquittal." (*Id.*, at p. 18 [57 L.Ed.2d at p. 14, 98 S.Ct. at p. 2150].)

[*]Assigned by the Chairperson of the Judicial Council.

accomplice within the meaning of Penal Code section 1111. But I do not find it necessary to interpret evidence of unsworn hearsay statements as "testimony" in order to reach the result that Penal Code section 1111 precludes defendant's conviction in the case at bench.

There are two grounds upon which I would reverse defendant's judgment of conviction, with directions to the trial court to enter a judgment of dismissal. *First,* Penal Code section 1111 should be interpreted to be applicable to the hearsay evidence of the accomplice's prior statements that are inconsistent with the accomplice's in-court testimony, but without construing the term "testimony" as including such unsworn hearsay evidence. *Second,* defendant's motion for a judgment of acquittal should have been granted because evidence of the accomplice's prior inconsistent statements—being the sole evidence that implicated defendant in the charged offense—is too unreliable to be deemed sufficient to sustain defendant's conviction.

I

*Penal Code Section 1111 Is Applicable to the*
*Hearsay Evidence of the Accomplice's Prior*
*Inconsistent Statements Without Considering*
*Such Evidence as Testimony*

I agree with the majority's analysis that Fouse, called as a witness by the prosecution in its case in chief, was an accomplice of defendant according to the prosecution's own evidence and theory of the crime. Thus, the prosecution's own evidence relieved defendant of both the burden of producing evidence on the issue and the burden of proving Fouse's accomplice status by a preponderance of the evidence. (See *People* v. *Tewksbury* (1976) 15 Cal.3d 953 [127 Cal.Rptr. 135, 544 P.2d 1335].)

Fouse, having been called as a witness by the prosecution, testified that neither he nor the defendant, his stepfather, had anything to do with the commission of the offense charged against defendant—the offense of discharging a firearm at an inhabited dwelling house in violation of Penal Code section 246. However, Fouse admitted in his testimony that he had been questioned after the date of the alleged offense by Deputy Sheriff Michael Lugos, but denied having stated to Lugos that he, Fouse, had fired a shotgun at the victim's home from a car driven by defendant. As a part of the prosecution's case in chief, Lugos was then called as a witness

and testified to Fouse's extrajudicial statements asserting that both he, Fouse, and the defendant had committed the offense charged against defendant. (See Evid. Code, §§ 1235, 770.)[1]

The majority focuses its analysis of Penal Code section 1111 on the question of whether the evidence of Fouse's prior hearsay statements to Lugos constituted "testimony" as that term is used in section 1111 to require the corroboration needed for the conviction of a defendant upon the testimony of an accomplice. The majority concedes that various sections of the Penal Code, the Civil Code, and the Code of Civil Procedure define or refer to "testimony" as constituting oral statements made by a person under oath in a court proceeding.

The Evidence Code does not depart from this concept, since section 710 provides: "Every witness before testifying shall take an oath or make an affirmation or declaration in the form provided by law." The importance of the oath or affirmation as a part of the concept of "testimony" is also illustrated by Evidence Code section 1290, which defines "former testimony" as meaning testimony given under oath in proceedings other than the current hearing or trial.[2]

Both the Legislature and the courts have consistently agreed that "evidence" and "testimony" are not coterminus terms. Legislative recognition of this difference is made clear by Evidence Code section 140, which defines "evidence" to mean "*testimony,* writings material objects, or other things presented to the senses that are offered to prove the existence or nonexistence of a fact." (Italics added.) Judicial recognition of this difference is set forth, without equivocation, in *Stern* v. *Superior Court* (1947) 78 Cal.App.2d 9, 13 [177 P.2d 308], as follows: "All evidence

[1]Evidence Code section 1235 provides: "Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing and is offered in compliance with Section 770."

Evidence Code section 770 provides: "Unless the interests of justice otherwise require, extrinsic evidence of a statement made by a witness that is inconsistent with any part of his testimony at the hearing shall be excluded unless: [¶] (a) The witness was so examined while testifying as to give him an opportunity to explain or to deny the statement; or [¶] (b) The witness has not been excused from giving further testimony in the action."

[2]Evidence Code section 1290 provides that " 'former testimony' means testimony given under oath in: [¶] (a) Another action or in a former hearing or trial of the same action; [¶] (b) A proceeding to determine a controversy conducted by or under the supervision of an agency that has the power to determine such a controversy and is an agency of the United States or a public entity in the United States; [¶] (c) A deposition taken in compliance with law in another action; or [¶] (d) An arbitration proceeding if the evidence of such former testimony is a verbatim transcript thereof."

is not testimony. Testimony is limited to that sort of evidence which is given by witnesses speaking under oath or affirmation [citation] . . . ."

The question before us is whether there is anything in the legislative history of Penal Code section 1111 to suggest that the Legislature, in using the word "testimony" in the section, intended for the term to have a meaning different from the uniform meaning set forth in the various codes and also in the decisional law. Certainly there is no principle of statutory construction that requires that, under all circumstances, words of a statute be construed according to the plain meaning of those words. On the contrary, as a guide to statutory construction, legislative intent must prevail over a literal construction. This latter basic principle was set forth many years ago in *In re Haines* (1925) 195 Cal. 605, 613 [234 P. 883]: " 'The mere literal construction of a section in a statute ought not to prevail if it is opposed to the intention of the legislature apparent by the statute; and if the words are sufficiently flexible to admit of some other construction it is to be adopted to effectuate that intention. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.' "

I agree with the majority that, in enacting Penal Code section 1111, the legislative purpose was to preclude the danger of a defendant being convicted from the suspect, untrustworthy and unreliable evidence coming from an accomplice who is likely to have self-serving motives that affect his credibility, and that if an accomplice's in-court, under-oath testimony is suspect, untrustworthy and unreliable, evidence of his prior, unsworn, out-of-court, inconsistent statements must be considered to be even more suspect, untrustworthy and unreliable. But the majority has unjustifiably narrowed its inquiry into Penal Code section 1111 to the question of whether the out-of-court statements of Fouse, the accomplice, constituted *testimony* by him.

The majority concludes, therefore, that to interpret evidence of an accomplice's out-of-court, unsworn hearsay statements as "nontestimony" would thwart the purposes of Penal Code section 1111. Applying the principle that legislative intent prevails over literal construction, Fouse's out-of-court, unsworn statements are construed by the majority to constitute "testimony" as that term is used in Penal Code section 1111. I find difficulty in making this quantum leap with the majority. This is not true legislative intent but what the Legislature *would have intended* had it foreseen the enactment, effective in 1967, of Evidence Code section 1235 which created an exception to the hearsay rule for evidence of a witness'

prior inconsistent statements. I fully recognize that this principle of statutory construction was created in 1975 in *In re Edgar M.,* 14 Cal.3d 727 [122 Cal.Rptr. 574, 537 P.2d 406].

In my view, however, this is a forced, strained and unsatisfactory principle of statutory construction. It runs counter to the view expressed in *In re Haines, supra,* as to when legislative intent is to prevail over a literal interpretation of a statute. " '[I]f the words are sufficiently flexible to admit of some other construction it is to be adopted to effectuate that intention.' " (*In re Haines, supra,* 195 Cal. 605, 613.) I am unable to conclude that the term "testimony," as used in Penal Code section 1111, is "sufficiently flexible" to admit of a construction that is contrary to the universal meaning attributed to that term over the years by legislative enactments and judicial decisions.

Application of the doubtful legislative "would-have-been-intent" principle of statutory construction to Penal Code section 1111 is not required in order to reach the majority result. An inquiry focused upon all the language of section 1111, considered in light of the admitted legislative purpose undergirding the section, leads to the same result. My reading and analysis of Penal Code section 1111 lead me to the conclusion that, even though the out-of-court statements of Fouse cannot, with any degree of logical statutory interpretation be deemed the "testimony" of Fouse in the instant case, the result does *not* follow that Penal Code section 1111 is precluded from having application to the case at bench.

It is of significance that section 1111 begins by providing that "[a] conviction *can not be had upon the testimony* of an accomplice unless it be corroborated . . . ." (Italics added.) This is the first reference to the term "testimony" in the section. A second reference to the word "testimony" in section 1111 is made in the second paragraph, which defines an accomplice "as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the *testimony* of the accomplice is given." (Italics added.)

Penal Code section 1111 does *not* state that the testimony of the accomplice which must be corroborated must be *testimony* that *implicates* the defendant in the offense charged or otherwise points the finger of guilt at the defendant. Can the sworn in-court testimony of an accomplice that *exculpates* a defendant be considered testimony of an accomplice that must be corroborated?

It can be assumed that an appropriate principle of statutory construction in the case at bench would be that the plain and unambiguous words of the statute should be given effect in determining that evidence of prior statements of a witness who is an accomplice do not constitute "testimony." Such assumption does not exhaust our inquiry. A conclusion that the out-of-court statements of Fouse do not constitute Fouse's testimony does not solve the problem of the appropriate construction of the remainder of the provisions of Penal Code section 1111.

When using the language in Penal Code section 1111 that "a conviction can not be *had* upon the testimony of an accomplice" (italics added), without independent corroboration of defendant's guilt, the Legislature has expressed an intention that a conviction may not be *based upon* the *testimony* of an accomplice, whatever that testimony may be. This language of section 1111 postulates a relationship of cause and effect. In the case at bench, defendant's conviction is just as surely and effectively *had* or *based upon* Fouse's exculpatory testimony under oath—which formed the sole basis of admitting, pursuant to Evidence Code section 1235, evidence of Fouse's inconsistent, unsworn hearsay statements which implicated defendant—as if Fouse had testified under oath to the very same facts that implicated defendant.

I can see no basis in any principle of statutory construction to define the term, "testimony of an accomplice," used in Penal Code section 1111, as being limited to testimony which itself directly implicates a defendant. The Legislature has not used language in Penal Code section 1111 that requires such a limited construction of the term. The term *"testimony"* should be interpreted to mean the testimony of an accomplice which *directly* implicates a defendant, and, also, the testimony of an accomplice which, although exculpatory of a defendant's participation in the crime charged, provides the *sole* basis for the admission of evidence of the accomplice's prior hearsay statements which implicate the defendant. In this latter situation, defendant's conviction is *had* upon the *testimony* of the accomplice to the same extent that it is *had* upon the testimony of the accomplice which directly points the finger of guilt to the defendant.

In my view, it is abundantly clear that the exculpatory and denial-of-guilt testimony given by Fouse in the case at bench constitutes the "testimony" upon which defendant's conviction is predicated, within the meaning of Penal Code section 1111, because it is this exculpatory and denial-of-guilt testimony of Fouse that brings into play Evidence Code section 1235, which makes admissible as substantive evidence the prior

statements of Fouse which implicated defendant in the offense in question. Evidence of the prior unsworn statements of the witness-accomplice Fouse, which is the only damaging evidence against defendant in the prosecution's case in chief, becomes admissible and usable *only* because Fouse, as a witness for the prosecution, gave exculpatory testimony that neither he nor defendant was involved in the charged offense.

It is my view that logic and legislative intent lead inexorably to the conclusion that defendant's conviction in the case at bench was had upon the denial-of-guilt and exculpatory testimony of Fouse. It is an irrelevant consideration that Fouse's testimony did not expressly point the finger of guilt at defendant. The logic of this conclusion is fortified by an analysis of the case of *People* v. *Sam* (1969) 71 Cal.2d 194 [77 Cal.Rptr. 804, 454 P.2d 700]. The *Sam* case indicates the importance of the nature of the testimony of a witness which makes admissible evidence of a prior inconsistent statement of that witness pursuant to the provisions of Evidence Code section 1235. Thus, in the case at bench, if Fouse, instead of testifying in denial of his own and defendant's participation in the crime charged, had answered every question put to him by the prosecutor by saying, "I don't remember," such answers would *not* have been deemed the kind of testimony to make admissible evidence of the out-of-court statements made by Fouse to Lugos. This result is emphasized in *Sam,* in which the court stated: " 'The right of impeachment does not exist where the witness states he has no recollection of the fact concerning which he is examined.' . . . In enacting section 1235 of the Evidence Code, the Legislature has retained the fundamental requirement that the witness' prior statement in fact be *'inconsistent* with his testimony at the hearing' before it can be admitted." (*Sam, supra,* 71 Cal.2d 194, 210; italics in original.)

In *Clifton* v. *Ulis* (1976) 17 Cal.3d 99 [130 Cal.Rptr. 155, 549 P.2d 1251], the court, in reliance upon *Sam,* reaches the same result in a civil case in which a witness' initial testimony consisted wholly of a lack of recollection. This lack-of-recollection testimony precluded application of Evidence Code section 1235 to the evidence of the witness' prior out-of-court statements and, hence, prevented such evidence from being admitted.

In the case at bench, therefore, it is only because Fouse gave a crucial type of testimony, namely, denying his personal guilt and denying that defendant was a participant in the charged offense that Evidence Code section 1235 became applicable to permit the prosecutor to introduce the

testimony of Lugos to prove Fouse's prior statements implicating defendant as a participant in the offense in question.

Prior to 1967, when the Evidence Code became effective, with its inclusion of section 1235, evidence that a witness had made a prior out-of-court statement that was inconsistent with his in-court testimony was admissible only for the purpose of attacking the witness' credibility and not to establish the truth of the matter stated in the statement. (*Albert v. McKay & Co.* (1917) 174 Cal. 451 [163 P. 666].) If the case at bench had arisen prior to 1967, evidence that Fouse had made prior statements incriminating defendant as a participant in the crime charged against defendant would have been admissible solely to impeach the denial-of-guilt and exculpatory testimony of Fouse. This, however, would not have presented any evidence for the prosecution capable of sustaining the conviction of defendant. It is clear, therefore, that in enacting Penal Code section 1111, the Legislature did not envision the admissibility of evidence of an accomplice's out-of-court statement for any purpose other than to attack the credibility of the accomplice as a witness.

Since the Legislature could not have intended that an accomplice's out-of-court statement, whatever the nature of its content, be introduced in evidence against a defendant to prove the truth of the matter stated, an interpretation of the term "testimony of an accomplice" in Penal Code section 1111 as meaning an accomplice's testimony that *exculpates* the defendant but triggers the admissibility of evidence of prior inconsistent statements, as well as an accomplice's testimony that implicates the defendant directly, produces a result that is consistent with the legislative premise that undergirds section 1111.

It is to be noted that Penal Code section 1111 requires that the testimony of an accomplice "be corroborated by such *other evidence* as shall tend to connect the defendant with the commission of the offense." (Italics added.) I think it is crystal clear that the Legislature intended that "such other evidence"—regardless of its nature such as testimony, writings or material objects (Evid. Code, § 140)—which must be the corroborating evidence, must be from a source other than the accomplice. This interpretation is consistent with the rule that one accomplice's testimony cannot be used to corroborate that of another accomplice. (*People v. Creegan* (1898) 121 Cal. 554 [53 P. 1082]; *People v. Scofield* (1971) 17 Cal.App.3d 1018 [95 Cal.Rptr. 405].) Thus, the exculpatory testimony of Fouse which made admissible evidence of Fouse's prior out-of-court statements inculpating defendant, required corroboration by

evidence from a source other than from Fouse. As a part of the case in chief, the People produced no such corroborating evidence in the case at bench.

## II

*Defendant's Motion for a Judgment of Acquittal*
*Should Have Been Granted Because Evidence of*
*the Accomplice's Prior Inconsistent Statements*
*Is too Unreliable to Be Deemed Sufficient to*
*Sustain Defendant's Conviction*

There is a distinction between *admissibility* of evidence and the *sufficiency* of evidence to sustain a verdict or finding. The various exceptions to the hearsay rule deal with admissibility of evidence only. The courts must still determine under particular circumstances whether the evidence introduced at trial—be it hearsay evidence or nonhearsay evidence or a combination thereof—is of sufficient probative value to sustain a criminal conviction.

Thus, in *People* v. *Gould* (1960) 54 Cal.2d 621 [7 Cal.Rptr. 273, 354 P.2d 865], the court held that a witness' extrajudicial statement identifying defendant as the perpetrator of the crime was admissible under the hearsay exception for prior identification statements (now provided for in Evid. Code, § 1238), even though the victim was unable to repeat this identification on the witness stand. In *Gould,* this hearsay evidence was the only evidence admitted to connect defendant with the charged offense. The *Gould* court held that although this hearsay statement of the victim was admissible in evidence under the exception to the hearsay rule for prior identification statements, it was insufficient of itself to sustain the defendant's criminal conviction. The *Gould* court stated: "An extra-judicial identification that cannot be confirmed by an identification at the trial is insufficient to sustain a conviction in the absence of other evidence tending to connect the defendant with the crime." (*Id.,* at 631.)

Similar in principle to *Gould* is *In re Eugene M.* (1976) 55 Cal.App.3d 650 [127 Cal.Rptr. 851], in which it was held that evidence of the prior statements of a witness admitted under the hearsay exception provided by Evidence Code section 1235 for statements inconsistent with the witness' testimony, was not sufficiently trustworthy to constitute substantial evidence to sustain a finding that a minor had committed the offenses charged against him, there being no other evidence to connect the minor

with the offenses apart from the evidence of a witness' prior inconsistent statements.

It is significant that in *In re Eugene M.,* there were circumstances present that cast a doubt upon the reliability or trustworthiness of the witness' prior inconsistent statements. The prior statements were unsworn out-of-court statements made by an apparent accomplice under threat of prosecution and thereafter repudiated under oath on the witness stand. In the *In re Eugene M.* case, there was police interrogation of the witness which did not involve physical or psychological coercion of the magnitude to make the witness' statements involuntary and inadmissible against the minor under the rule of *People* v. *Underwood* (1964) 61 Cal.2d 113 [37 Cal.Rptr. 313, 389 P.2d 937]. Nevertheless, the police interrogation produced an inherent indicia of untrustworthiness that precluded the prior statements from being held sufficient by the *Eugene M.* court to constitute substantial evidence to support a finding that the minor had committed the charged offenses, there being no other evidence pointing to his commission of the charged offenses.

Similarly, in the case at bench, evidence of Fouse's prior unsworn statements incriminating defendant as a participant in the charged offense lacks the indicia of trustworthiness to sustain defendant's conviction. The fundamental basis of the requirement imposed in Penal Code section 1111 that an accomplice's testimony, in and of itself, is insufficient to sustain a defendant's conviction is predicated on the premise, validated by experience, that such testimony is inherently unreliable and untrustworthy.

"Accomplice testimony is suspect because, like hearsay, it too may be unreliable. '[E]xperience has shown that the evidence of an accomplice should be viewed with care, caution and suspicion because it comes from a tainted source and is often given in the hope or expectation of leniency or immunity.' [Citations.] In addition to being derived from a suspect source accomplice testimony is frequently cloaked with a plausibility which may interfere with the jury's ability to evaluate its credibility. ' "[A]n accomplice is not merely a witness with a possible motive to tell lies about an innocent accused but is such a witness peculiarly equipped, by reason of his inside knowledge of the crime, to convince the unwary that his lies are the truth." ' " (*People* v. *Tewksbury* (1976) 15 Cal.3d 953, 967 [127 Cal.Rptr. 135, 544 P.2d 1335].)

If an accomplice's testimony under oath is suspect, unreliable and untrustworthy, evidence of his prior inconsistent statements, not made under oath, must be deemed even more suspect, untrustworthy and unreliable. It is my view, therefore, that in addition to the requirements of Penal Code section 1111, the principles enunciated in *Gould* and *In re Eugene M.* mandate that evidence of Fouse's prior statements to Lugos that implicated defendant as a participant in the charged offense be held insufficient as a matter of law to sustain defendant's conviction.

### III

*Penal Code Section 1118 Mandates a Judgment of*
*Acquittal for Insufficiency of the Evidence at*
*the Close of the Prosecution's Case in Chief Even*
*in the Absence of a Defendant's Motion Therefor*

The dissent asserts that the defendant has been proven guilty beyond a reasonable doubt of firing a shotgun at an inhabited dwelling—a "vicious" crime. This assertion is based on the untenable assumption that the proceedings below were all valid; that the trial judge properly denied defendant's motion for acquittal, made after the close of the prosecution's case-in-chief, because of the absence of specifications regarding the insufficiency of the evidence; and that the trial judge then properly admitted the prosecution's rebuttal evidence and properly found defendant guilty based on (1) the accomplice's hearsay out-of-court statements inconsistent with his exculpatory testimony, and (2) the corroboration evidence introduced by the prosecution in rebuttal.

Although I consider that the majority opinion has set forth, by rather persuasive reasoning, that defendant was *not* validly found guilty of the offense charged, I do not agree entirely with the majority's interpretation of Penal Code section 1118, and thus deem it appropriate to add some comments of my own.

The majority opinion points out that Penal Code section 1118 *authorizes* the trial court to order a judgment of acquittal on its own motion as well as on a defendant's motion. It is my view, however, that Penal Code section 1118 *mandates* and *requires* the trial court to order a judgment of acquittal when, at the close of the prosecution's case-in-chief, the evidence is insufficient to sustain defendant's conviction. The language of section 1118 does not logically permit of an interpretation

that gives the trial judge a discretion to refuse to order a judgment of acquittal in the face of insufficiency of the evidence, whether a defendant has made a motion for a judgment of acquittal or not.

California's Penal Code section 1118 is substantially the same as rule 29(a) of the Federal Rules of Criminal Procedure and thus should receive the same construction. Rule 29(a) provides, in pertinent part for the issue before us, that "[t]he court on motion of a defendant or of its own motion *shall* order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses." (Italics added.) Rule 29(a) has been interpreted to be mandatory and not discretionary if the prosecution's evidence in its case-in-chief is insufficient to sustain a defendant's conviction. In *Cephus v. United States* (D.C.Cir. 1963) 324 F.2d 893, the trial judge erroneously denied the defendant's motion for an acquittal at the close of the prosecution's case-in-chief. Thereafter, during the defense presentation, a codefendant gave testimony against the defendant and the jury convicted the defendant. On appeal from the judgment of conviction, the court rejected the prosecution's contention that, once there has been a denial of the motion for an acquittal, made after the close of the prosecution's case-in-chief, the appellate court is required to consider *all* the evidence introduced against defendant, and not just the prosecution's evidence presented in its case-in-chief, in determining whether the defendant is entitled to a reversal of the trial court's erroneous denial of the defendant's motion for an acquittal. "But Rule 29(a) of the Federal Rules of Criminal Procedure makes it clear that the first ruling [the denial of the motion for acquittal made at the close of the prosecution's case in chief] is not discretionary in criminal cases. A judgment of acquittal is mandatory if the Government's case is insufficient. The trial judge has no discretion to reserve his ruling in the expectation that the defendant will testify." (*Cephus, supra,* 324 F.2d 893, 897; fn. omitted.) It was also stated in *Cephus* that "[a] defendant cannot be boxed out of his Rule 29(a) rights by forcing him to go to trial with a co-defendant, or by waiting hopefully for him to convict himself" (*id.,* at p. 898) (conc. opn.), and that "[i]f the denial of the motion was erroneous when made, it should be corrected on appeal. Few errors of law are as prejudicial to the defendant. Subsequent testimony cannot 'cure' the error." (*Id.,* at p. 898; fn. 2.) (Conc. opn.)

It is significant that rule 29(a) of the Federal Rules of Criminal Procedure has been interpreted to require a judgment of acquittal for insufficiency of the evidence even if the defendant does not make a

motion for a judgment of acquittal. "Further, Rule 29(a) is now so worded as to require the court 'of its own motion' to order the entry of a judgment of acquittal if the evidence is insufficient to sustain a conviction. [¶] In any event, there can be little or no need for a formal motion for a judgment of acquittal in a criminal case tried to a court without a jury upon the defendant's plea of not guilty. The plea of not guilty asks the court for a judgment of acquittal, and a motion to the same end is not necessary. [Citation.] In such a case, therefore, we hold that the sufficiency of the evidence to sustain a conviction should be reviewed the same as if there had been a formal motion for judgment of acquittal." (*Hall* v. *United States* (5th Cir. 1961) 286 F.2d 676, 677; fn. omitted.)

The mandatory nature of the trial judge's obligation to order an acquittal under rule 29(a) of the Federal Rules of Criminal Procedure comes from the use of the word "shall" in the rule. "[T]he Rule states in terms that the court '*shall* order the entry of judgment of acquittal . . . if the evidence is insufficient to sustain a conviction.' " (*Cephus, supra,* 324 F.2d 893, 898; fn. 2.) (Italics in original.) (Conc. opn.)

Penal Code section 1118 provides, in pertinent part for the issue before us: "In a case tried by the court without a jury, a jury having been waived, the court on motion of the defendant or on its own motion *shall* order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading after the evidence of the prosecution has been closed if the court, upon weighing the evidence then before it, finds the defendant not guilty of such offense or offenses." (Italics added.)

The same mandatory language—"*shall*"—is used in Penal Code section 1118 as is found in rule 29(a) of the Federal Rules of Criminal Procedure. There is no valid reason why Penal Code section 1118 should be given an interpretation different from that given the same mandatory language found in rule 29(a) of the Federal Rules of Criminal Procedure.

I find the legislative intent to be clear and unambiguous in Penal Code section 1118. The section requires the trial court, on its own motion—irrespective of whether a defendant makes a motion for judgment of acquittal with or without a specification of grounds—to order a judgment of acquittal in a court trial when the prosecution's evidence at the close of its case-in-chief is insufficient to sustain a conviction. The language of Penal Code section 1118 does not permit of an interpretation that will allow the trial judge to exercise any discretion in the matter. Under Penal Code section 1118, the trial judge possesses no power or authority to require a defendant to make in any form a motion for judgment of

acquittal, let alone to require a motion of acquittal with specification of grounds, in order to permit the prosecution to cure any defects in its evidentiary case-in-chief.

In interpreting Penal Code section 1118 as requiring a defendant's motion to specify grounds for insufficiency of the evidence to sustain a conviction, the dissent in the instant case relies on an analogy between Penal Code section 1118 and Code of Civil Procedure section 581c.[3] The analogy is inappropriate and inapposite. Section 581c applies to a motion for a judgment of nonsuit in a civil *jury* case only. Penal Code section 1118, on the contrary, applies solely to a judgment of acquittal in a criminal *nonjury court* trial. In addition, the language of the two sections is totally dissimilar. Section 581c does *not* require the trial judge to take any action in the absence of a motion by the defendant while Penal Code section 1118 does *not* permit the trial court, before taking appropriate action, to wait for a motion of acquittal from the defendant. Rather, section 1118 requires the trial court, "on its own motion," to acquit the defendant if the prosecution's case-in-chief is insufficient to convict the defendant.

Thus, in the case before us, had defendant *not* made any motion for judgment of acquittal, the trial court was nevertheless under a mandatory duty to grant to defendant a judgment of acquittal because of insufficiency of the evidence to sustain a conviction. The language of Penal Code section 1118 is neither ambiguous nor unclear in this regard. On the contrary, it is lucidly clear and compelling.

I view Penal Code section 1118 (and its companion § 1118.1)[4] and Penal Code section 1111 as expressing a legislative policy in support of our adversary system of criminal trials that has as its principal component the following principle: "One of the greatest safeguards for the individual under our system of criminal justice is the requirement that the prosecution must establish a prima facie case by its own evidence before the defendant may be put to his defense." (*Cephus, supra,* 324 F.2d 893, 895.)

---

[3]Code of Civil Procedure section 581c provides: "After the plaintiff has completed his opening statement, or the presentation of his evidence in a trial by jury, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a judgment of nonsuit. [¶] If the motion is granted, unless the court in its order for judgment otherwise specifies, such judgment of nonsuit operates as an adjudication upon the merits."

[4]Penal Code section 1118.1 provides: "In a case tried before a jury, the court on motion of the defendant or on its own motion, at the close of the evidence on either side and

The dissent appears to label this principle a "technicality" which enables a defendant, proven guilty beyond a reasonable doubt, to go free. This position of the dissent presents an untenable and unsupportable analysis. I am unable to find any logic or plausibility that would support the notion of the dissent that the California Legislature's judgment, embodied in Penal Code section 1118, and carried out by the majority's decision in the case before us, constitutes a "technicality" that thwarts the criminal process to establish the guilt of those charged with crime.

Rather than concluding—as does the dissent—that the rule announced today by the majority means that our judicial system has spent over three years determining that the defendant is guilty but must nevertheless go free, I would conclude that the rules announced by the majority today mean that our judicial system has unfortunately, and not to our credit, taken three years to vindicate the legislative policy that a defendant shall not be found guilty through a violation of the eminently just principle that the prosecution must establish a viable case against defendant by its own evidence in the prosecution's case-in-chief and without assistance from the defendant. In the case at bench, had the trial judge followed the legislative mandates of Penal Code sections 1111 and 1118, the so-called rebuttal evidence introduced by the prosecution would never have appeared as part of the record. Statutory provisions cannot be twisted through indefensible interpretations as a means of curing the prosecution's failure, for whatever reason, to present all of its available evidence to establish a viable case against defendant as part of the prosecution's case-in-chief.

The prosecution in the case at bench certainly should have been aware of Penal Code sections 1111 and 1118. The responsibility for the failure of the prosecution in the case before us cannot be shifted to any other segment of the criminal justice system. Certainly the Legislature's judgment, embodied in Penal Code sections 1111 and 1118 cannot, with any degree of logic or validity, be blamed for the prosecution's failure to introduce, as a part of its case in chief, the evidence it was permitted to introduce in rebuttal, which was not in fact rebuttal evidence at all but evidence which came within the scope of evidence required to be introduced, if at all, as part of the prosecution's case-in-chief. The

---

before the case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal. If such a motion for judgment of acquittal at the close of the evidence offered by the prosecution is not granted, the defendant may offer evidence without first having reserved that right."

position of the dissent, which seeks to shift to the majority decision the blame for the prosecution's failure to be governed by the unambiguous provisions of Penal Code sections 1111 and 1118, presents a faulty and unpersuasive point of view.

**CLARK, J.,** Dissenting.—The question presented is whether a defendant must specify the grounds when moving for a judgment of acquittal pursuant to section 1118 of the Penal Code.[1]

In civil practice the counterpart to Penal Code section 1118 is Code of Civil Procedure section 581c.[2] That section, like section 1118, does not expressly provide that the grounds for a motion under it must be specified. Nevertheless, "[b]ecause of the possible drastic effect of the motion the courts have established rules to protect the plaintiff. In order to alert him to any deficiencies and to give him an opportunity to cure or eliminate them: (1) the motion for nonsuit must state the precise grounds upon which it is made, with the defects in the opening statement clearly and particularly indicated (2 Witkin, Cal. Procedure (1954) Trial § 129); (2) 'only the grounds specified [by counsel] should be considered by the lower court in its ruling, or by the appellate court on review' (2 Witkin, *id.,* § 130); and (3) 'grounds not specified in a motion for nonsuit will be considered by an appellate court only if it is clear that the defect is one which could not have been remedied had it been called to the attention of plaintiff by the motion.' (*Lawless* v. *Calaway,* 24 Cal.2d 81, 94 [147 P.2d 604].)" (*Timmsen* v. *Forest E. Olson, Inc.* (1970) 6 Cal.App.3d 860, 868 [86 Cal.Rptr. 359].)

The plaintiff in a criminal case is, of course, the People. What, to use the language of *Timmsen,* is the "possible drastic effect" of a section 1118 motion from which the People should be protected by a requirement that the grounds for such a motion be plainly stated? It is the granting of a judgment of acquittal in favor of a defendant who would have been found guilty beyond a reasonable doubt of the crime charged against him

---

[1]Section 1118 provides in pertinent part: "In a case tried by the court without a jury . . . the court on motion of the defendant or on its own motion shall order the entry of a judgment of acquittal . . . after the evidence of the prosecution has been closed if the court, upon weighing the evidence then before it, finds the defendant not guilty . . . ."

[2]Section 581c provides: "After the plaintiff has completed his opening statement, or the presentation of his evidence in a trial by jury, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a judgment of nonsuit. [¶] If the motion is granted, unless the court in its order for judgment otherwise specifies, such judgment of nonsuit operates as an adjudication upon the merits."

if the people had been given fair notice of the purported deficiencies in their case and an opportunity to remedy them.

The evil in failing to require fair notice is illustrated by this case. Defendant has been proven guilty beyond a reasonable doubt of firing a shotgun at an inhabited building (Pen. Code, § 246). Had defendant specified as the ground for his section 1118 motion the absence of corroboration for the accomplice's testimony, the People could have moved to reopen their case-in-chief and provided such corroboration. This is not a matter of speculation. The People did provide such corroboration on rebuttal. Had the People been unable to corroborate the accomplice's testimony, the trial court—properly apprised of the specific grounds for the motion—would have entered a judgment of acquittal, saving defendant and society the time and expense involved in subsequent proceedings in the Court of Appeal and this court. However, because of the rule announced today our judicial system has spent over three years determining that defendant is guilty beyond a reasonable doubt of a vicious crime but must nevertheless go scot free.[3]

The majority respond that requiring a specific statement of the grounds in support of a motion for acquittal will place the defendant in a dilemma: If he specifies the defects in their case, the People have an opportunity to reopen in order to cure the defects; if he fails to specify the defects, the motion will be denied and he will be precluded from raising the point on appeal.

The short answer is that a defendant is commonly and properly faced with "dilemmas" of this sort. For example, a defendant is required to specify the grounds for an objection to the admissibility of evidence. "[It is] the general rule that questions relating to the admissibility of evidence will not be reviewed on appeal in the absence of a specific and timely objection in the trial court on the ground sought to be urged on appeal. (See Evid. Code, § 353; *People* v. *Welch* (1972) 8 Cal.3d 106, 114-115 [104 Cal.Rptr. 217, 501 P.2d 225]; *People* v. *De Santiago* (1969) 71 Cal.2d 18, 22 [76 Cal.Rptr. 809, 453 P.2d 353].) The contrary rule would deprive the People of the opportunity to cure the defect at trial and would 'permit the

---

[3]Justice Macklin Fleming has observed: "Each time the criminal process is thwarted by a technicality that does not bear on the innocence or guilt of the accused, we trumpet abroad the notion of injustice; and each time a patently guilty person is released, some damage is done to the general sense of justice." (Fleming, The Price of Perfect Justice: The Adverse Consequences of Current Legal Doctrine on the American Courtroom (1974) p. 9.)

defendant to gamble on an acquittal at his trial secure in the knowledge that a conviction would be reversed on appeal.' (*Coy* v. *Superior Court* (1959) 51 Cal.2d 471, 473 [334 P.2d 569].)" (*People* v. *Rogers* (1978) 21 Cal.3d 542, 548 [146 Cal.Rptr. 732, 579 P.2d 1048].)

I would affirm the judgment.