7 Cal.App.4th 845 (1992)
9 Cal. Rptr.2d 265
THE PEOPLE, Plaintiff and Respondent,
v.
RONNIE LAVELLE HARMON, Defendant and Appellant.
Docket No. B056326.
Court of Appeals of California, Second District, Division Seven.
June 23, 1992.
*848 COUNSEL
Maureen J. Shanahan, under appointment by the Court of Appeal, for Defendant and Appellant.
Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Acting Assistant Attorney General, John R. Gorey and Donald E. de Nicola, Deputy Attorneys General, for Plaintiff and Respondent.
OPINION
WOODS (Fred), J.
Convicted by a jury of burglary (Pen. Code,[1] 459) and grand theft (§ 487, subd. 1), appellant claims evidentiary and instructional errors, judicial and prosecutor misconduct, and ineffective assistance of counsel require reversal. We conclude these claims are without merit and affirm the judgment.

PROCEDURAL AND FACTUAL BACKGROUND
Appellant and Stacy Alan Daniels (Daniels) were jointly charged with burglary and grand theft. Five prior felony convictions (§ 667.5, subd. (b)) were alleged regarding appellant and one regarding Daniels. During jury selection Daniels pleaded guilty to burglary. A jury convicted appellant of burglary and grand theft. Appellant waived jury regarding the felony conviction allegations and the trial court found four true. Appellant was sentenced to a six-year state prison term.
There being no insufficiency of evidence claim, we synopsize the evidence and do so with a perspective favoring the judgment. (People v. Barnes (1986) 42 Cal.3d 284, 303-304 [228 Cal. Rptr. 228, 721 P.2d 110].)
On June 29, 1990, Daniels entered a Burbank Footlocker store and after looking at expensive Nike jogging suits asked the clerk about certain athletic shoes. When the clerk went to the rear storeroom, Daniels grabbed jogging suits worth approximately $1,200 and ran from the store, through an alley, to appellant's parked car. A witness, seated in her car waiting for her boyfriend, saw and heard Daniels running, his arms full of jogging suits, with plastic tags loudly clicking. She saw him open the passenger door of appellant's brown, hatchback car, shove in the clothes, and enter. Appellant quickly drove away.
*849 Almost immediately the theft was discovered and a description of Daniels, appellant, the getaway car, and the stolen jogging suits was broadcast over the police radio. A detective heard the broadcast, saw the getaway car and followed it to appellant's apartment. Appellant and Daniels were arrested and all the stolen jogging suits recovered from appellant's car.
Appellant did not testify. The only defense witness, appellant's girlfriend, testified that appellant's car could not start quickly or go fast.

DISCUSSION

1. Appellant contends the court erred in admitting a tape-recorded conversation between Daniels and appellant.

After Daniels and appellant were arrested they were placed in a police car. A recorder, hidden in the trunk, was turned on and recorded their conversation. An edited tape and transcript were admitted into evidence.
(1) Appellant, who at trial objected on relevancy grounds, contends admission of the tape and transcript violated his Sixth Amendment rights of confrontation and cross-examination.
We do not decide the merits of this contention because appellant did not object to the evidence on this ground in the trial court. (Evid. Code, § 353; People v. Simon (1989) 208 Cal. App.3d 841, 849 [256 Cal. Rptr. 373].) "[Q]uestions relating to the admissibility of evidence will not be reviewed on appeal in the absence of a specific and timely objection in the trial court on the ground sought to be urged on appeal." (People v. Rogers (1978) 21 Cal.3d 542, 548 [146 Cal. Rptr. 732, 579 P.2d 1048].) (Italics added.)

2. Appellant contends the trial court erred in failing to give accomplice instructions concerning the extrajudicial statements of Daniels.

(2) When there is "testimony of an accomplice" (§ 1111) the trial court has a duty to give appropriate accomplice instructions. (People v. Belton (1979) 23 Cal.3d 516 [153 Cal. Rptr. 195, 591 P.2d 485].)
Appellant claims the trial court, by failing to give any accomplice instructions, breached this duty. Appellant is mistaken for two reasons.
*850 First, although Daniels was clearly an accomplice, Daniels did not testify[2] and thus there was no "testimony of an accomplice." (§ 1111.) Although Belton extended "accomplice testimony" to include prior inconsistent statements of an accomplice-witness (23 Cal.3d at p. 526), an extrajudicial statement by a nonwitness is not testimony. (People v. Sully (1991) 53 Cal.3d 1195, 1230 [283 Cal. Rptr. 144, 812 P.2d 163].)
Second, trial counsel for appellant introduced statements by Daniels in favor of appellant. ("Q: Did he [Daniels] tell you that Mr. Harmon [appellant] didn't have anything to do with this? A. [Detective Pusl]: Yes.") When an accomplice gives testimony favoring a defendant it is error to give accomplice instructions, unless requested by the defendant. (People v. Graham (1978) 83 Cal. App.3d 736, 742-744 [149 Cal. Rptr. 6].) Appellant made no such request.

3. Appellant contends the trial court erred in giving three consciousness of guilt instructions.

The trial court gave CALJIC Nos. 2.03[3] (consciousness of guilt-falsehood), 2.04[4] (efforts by defendant to fabricate evidence), and 2.52[5] (flight after crime).
(3) Appellant contends giving these instructions was error for three reasons: (1) no evidence justified them; (2) the instructions are argumentative; and (3) the instructions are impermissibly "pinpoint instructions." Appellant's contention is frivolous.
The 19-page transcript of appellant's recorded conversation with Daniels fully supports the giving of CALJIC Nos. 2.03 and 2.04. During this *851 conversation appellant and Daniels contrived a defense for appellant which appellant then repeated to the police. The concocted story was that they were strangers to each other and Daniels simply offered appellant $10 to give him and his "laundry" a ride. Similarly, there was ample evidence of "flight" to support CALJIC No. 2.52.
Appellant's argumentative and "pinpoint" assertions are answered by People v. Bacigalupo (1991) 1 Cal.4th 103, 127-128 [2 Cal. Rptr.2d 335, 820 P.2d 559] (CALJIC Nos. 2.52 and 2.03 not argumentative or biased) and People v. Kelly (1992) 1 Cal.4th 495 [3 Cal. Rptr.2d 677, 822 P.2d 385] (CALJIC No. 2.03 not a "pinpoint" instruction).

4. Appellant contends the trial court committed misconduct.

a. Advising the jury Daniels pled guilty.

(4) When the trial started there were two defendants, appellant and Daniels. Throughout the entire jury selection process the jury saw both defendants and answered the voir dire questions of their attorneys. When, during selection of alternate jurors, Daniels, out of the presence of the jury, pleaded guilty, some explanation to the jury was called for. The trial court, instead of simply advising the jury that Daniels was no longer a trial defendant and they should not be concerned about the reasons, told the jury Daniels had pleaded guilty. He also immediately instructed them that appellant's guilt or innocence had nothing to do with Daniels's guilty plea and then asked the jury if they could follow that instruction. They indicated they could.
Appellant did not object at trial, did not request a further curative admonition, and did not move for a mistrial. His objection now comes too late. (Evid. Code, § 353; People v. Rogers, supra, 21 Cal.3d 542, 548; People v. Green (1980) 27 Cal.3d 1, 28 [164 Cal. Rptr. 1, 609 P.2d 468].)
Further, we observe there was neither reason for appellant to object nor prejudice from his not objecting. Central to appellant's claimed innocence was Daniels's guilt. Appellant's counsel, in arguing his innocence to the jury, relied upon Daniels's admitted guilt. Counsel stated: "Mr. Daniels admitted he did this burglary and grand theft. No argument there. I mean, you have the witnesses. What is he going to say?"
We conclude appellant cannot complain of the trial court's nonprejudicial misconduct.

b. Turning his back during defense counsel's argument to the jury.

(5a) Appellant contends the trial court committed misconduct by turning its back to defense counsel during her jury argument. The relevant events *852 occurred as follows. On November 19, 1990, at 1:50 p.m., defense counsel began her final argument. When she finished the prosecutor gave her closing argument. The court completed its jury instructions. Deliberations began. At 4 p.m. the jury recessed. The following day, November 20, 1990, at 11:20 a.m. the jury returned their guilty verdicts. The bifurcated "priors" trial was then conducted and at defense counsel's request the probation and sentence hearing was set for November 28, 1990. On that date, after a full hearing, including testimony from a defense witness, and after sentence had been imposed, the court asked, "Anything else?"
Then, for the first time, defense counsel stated the court had showed disrespect for her by turning its back during her argument to the jury.
Initially, the court's reaction to this delayed complaint was one of puzzlement. The court stated: "I have no idea what you are talking about."
When counsel focused on the court's allegedly having turned its back on counsel during argument, the court stated, "I think you are raising [] hypersensitivity to a new level." The court also explained, "I often turn away from the jury."
(6) We are mindful that "the [trial] judge has a duty to be impartial, courteous and patient ... and its violation may be so serious as to constitute reversible error." (5 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) § 2891, p. 3530.) Nor do we doubt that partiality may be shown by wordless conduct: a dismissive gesture, a look of disbelief, a bored closing of eyes, or certainly, by turning one's back to a speaker.
(5b) But such wordless conduct is particularly susceptible of misconstruction. The instant facts are illustrative. We do not doubt that, as defense counsel stated, "every time when [she] turned around [the trial court's] back was totally to me." Equally, we do not doubt that no disrespect was intended nor probably inferred by anyone but defense counsel. After all, defense counsel was arguing to the jury, surely looking at the jury, not to and at the trial court.
If such an ambiguous judicial slight is perceived by counsel, a more timely complaint than was made here is required. So too is a request for a curative admonition. (People v. Franklin (1976) 56 Cal. App.3d 18, 24 [128 Cal. Rptr. 94] [Trial court turned its back to defense expert witness during his testimony. No curative admonition requested. No prejudicial error.].) As in People v. Franklin, the trial court instructed the jury: "`I have not intended by anything I have ... done ... to intimate or suggest what you should *853 find to be the facts ... or that I believe or disbelieve any witness. [¶] If anything I have done ... has seemed to so indicate, you will disregard it and form your own conclusion.'"
Appellant's contention is not well taken.

5. Appellant contends the prosecutor committed misconduct.

(7) In her argument to the jury the prosecutor referred to Daniels having pleaded guilty. Appellant contends this was misconduct. Having made no objection at trial, appellant waived any error. (Evid. Code, § 353; People v. Ghent (1987) 43 Cal.3d 739, 762 [239 Cal. Rptr. 82, 739 P.2d 1250]; People v. Carrera (1989) 49 Cal.3d 291, 337 [261 Cal. Rptr. 348, 777 P.2d 121].)
Further, as we have previously indicated, appellant's counsel in her argument made the identical reference.
The contention is meritless.

6. Appellate counsel claims trial counsel was ineffective for not challenging "the admissibility of the tape recordings based on a Miranda violation."

(8) Appellate counsel states: "At the time of the arrest, and before being placed in the squad car, Appellant was not read his Miranda rights. Despite this knowledge, trial counsel did not attempt to challenge the admissibility of the tape recording on the basis that a Miranda violation occurred."
Contrary to appellate counsel's assumption, Miranda (Miranda v. Arizona (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]) does not require an advisement of rights in order to admit statements of an arrestee. Rather, the dual conditions for a Miranda-advisement are "custodial interrogation," i.e., "questioning initiated by law enforcement officers...." (Id. at p. 444 [16 L.Ed.2d at p. 706].)
When there is custody but not interrogation Miranda does not apply.
When appellant and Daniels conversed in the back of the police car, secretly being recorded, there was custody but no interrogation. (People v. Boulad (1965) 235 Cal. App.2d 118 [45 Cal. Rptr. 104] [accomplices were arrested, put in adjoining cells and had their conversation secretly recorded by the police]; People v. Apodaca (1967) 252 Cal. App.2d 656 [60 Cal. Rptr. 782] [jail conversation between defendant and visitor secretly recorded]; *854 People v. Califano (1970) 5 Cal. App.3d 476, 482 [85 Cal. Rptr. 292] [coperpetrator arrestees put in police interview room with hidden microphone]; People v. Todd (1972) 26 Cal. App.3d 15, 17 [102 Cal. Rptr. 539] [hidden tape-recorded conversation of suspects in back of police car]; People v. Lucero (1987) 190 Cal. App.3d 1065 [235 Cal. Rptr. 751] [same].)
Trial counsel was not ineffective for not making a baseless challenge.

7. Presentence credit error.

The trial court gave appellant 172 days actual custody credit. Apparently, appellant was not given one day's credit for December 18, 1990, the date he was sentenced to state prison. As respondent concedes, he should have been.

DISPOSITION
The abstract of judgment is ordered corrected to show 173 days of actual local time credit (instead of 172) and 259 total days credit for time spent in custody (instead of 258). The 86 days of local conduct credits is unaffected by this correction. (People v. Bravo (1990) 219 Cal. App.3d 729, 731 [268 Cal. Rptr. 486].)
As corrected, the judgment is affirmed.
Lillie, P.J., concurred. Johnson, J., concurred in the judgment only.
Appellant's petition for review by the Supreme Court was denied October 16, 1992.
NOTES
[1] Unless otherwise noted all statutory references are to the Penal Code.
[2] The prosecutor "called" Daniels as a witness. But because both Daniels and his attorney had indicated that Daniels intended to invoke his privilege against self-incrimination, the court did not require Daniels to actually take the witness stand. No oath was administered. No questions were asked of him. Daniels was excused.
[3] "If you find that before this trial the defendant made a willfully false or deliberately misleading statement concerning the crime for which he is now being tried, you may consider such statement as a circumstance tending to prove a consciousness of guilt. However, such conduct is not sufficient by itself to prove guilt, and its weight and significance, if any, are matters for your determination."
[4] "If you find that a defendant attempted to or did fabricate evidence to be produced at trial, such conduct may be considered by you as a circumstance tending to show a consciousness of guilt. However, such conduct is not sufficient by itself to prove guilt and its weight and significance, if any, are matters for your determination."
[5] "The flight of a person immediately after the commission of a crime, or after he is accused of a crime, is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in the light of all other proved facts in deciding the question of his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine."