Filed 8/26/13  P. v. Salazar CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>VICTOR SALAZAR,<br><br>    Defendant and Appellant. | G047211<br><br>(Super. Ct. No. 08NF1236)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Richard M. King, Judge.  Affirmed in part, reversed in part and remanded for resentencing.

Susan S. Bauguess, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lilia E. Garcia and Elizabeth M. Carino, Deputy Attorney General, for Plaintiff and Respondent.

\*          \*          \*

A jury convicted defendant Victor Salazar of four counts of lewd acts on a child 15 years old and at least 10 years younger than the defendant (Pen. Code § 288, subd. (c)(1)),[1] and two counts of misdemeanor sexual battery (§ 243.4, subd. (e)(1)). The court sentenced defendant to a state prison term of four years, comprised of the following: The midterm of two years on the first lewd conduct count, one-third the midterm of eight months consecutively on each of the other three lewd conduct counts. On the misdemeanor counts, the court imposed a six month jail term on the first sexual battery count to run consecutively to the first lewd conduct count, and a six month jail term on the second sexual battery count to run concurrently to the first lewd conduct count. The misdemeanor sexual battery counts were ordered to be served in any penal institution.

After the prosecution rested, defendant filed a motion under section 1118.1 for acquittal (1118.1 motion) of the four counts of lewd acts, claiming the People had not proved the defendant was at least 10 years older than the victims. Indeed, the prosecutor never submitted evidence of the defendant's age. The court denied the motion on the ground the jury could judge from defendant's appearance that defendant was at least 10 years older than the victims. Defendant then testified during the defense, and the prosecutor elicited defendant's age on cross-examination. Defendant was at least 10 years older than the victims, but just barely.

Defendant claims on appeal the 1118.1 motion should have been granted because the defendant's appearance was not substantial evidence he was at least 10 years older than the victims. We agree. Evidence of defendant's age adduced during the defense case cannot cure the error, and thus reversal of the lewd-acts counts is required. Defendant also contends there is no substantial evidence to support the sexual battery counts. There, we disagree and affirm the judgment as to the sexual battery counts. We

---

[1] All statutory references are to the Penal Code.

2

will remand for resentencing, and thus defendant's argument that he should have been granted probation is moot.

FACTS

The prosecution presented the following evidence in its case-in-chief.

Defendant was a case manager in the Unaccompanied Children's Program at Florence Crittenton Services (Crittenton). When children cross the border illegally without a parent or guardian and are taken into custody, they are turned over to U.S. Immigration and Customs Enforcement (ICE), which in turn delivers the children to an Unaccompanied Children's Program. The Unaccompanied Children's Program tries to either reunify the child with a family member or obtain foster placement. Each child at Crittenton has a case manager and therapist, and they receive medical services and schooling.

Defendant was the case manager for the three alleged victims in this case. As case manager, he was responsible for working with the individual children in attempts to either reunite them with their family, return them to their country of origin, or assist their placement into foster care. The program director at Crittendon had a good working relationship with defendant and thought of him as a good employee with no problems or complaints.

Each child is required to have two 10-minute calls per week with a family member. These calls usually are made either in the case manager's office or in the housing unit. When these calls occurred in a case manager's office, the door would generally be closed.

There are three alleged victims in this case. Victim No. 1 was frequently getting in trouble at school. The program director described him as a "volatile kid" who had a troubled background and had lived on the streets. Victim No. 1 was 15 years old the entire time he was at Crittenton. Victim No. 1 would meet with defendant in

3

defendant's office at least once a week. During such meetings defendant's office door would be closed. On approximately five occasions defendant touched Victim No. 1's upper thighs, approximately where his pockets were, and on one occasion touched Victim No. 1's zipper as if to open it, and rubbed his penis over his shorts. Victim No. 1 did not like the touching. He feared that if he divulged the touching to others, defendant may not find him a placement outside the shelter or may send him back to his home country of Honduras. Defendant, however, never threatened Victim No. 1 that if he told anyone of the touching there would be negative repercussions. Based on the above conduct, the People charged defendant with two counts of lewd acts on a 15-year-old child (counts 1 & 2). (Pen. Code, § 288, subd. (c)(1).)

Victim No. 2 would visit defendant's office to discuss his case and would also make phone calls home from defendant's office. On more than 10 occasions while Victim No. 2 was talking on the telephone defendant would reach under Victim No. 2's shorts and rub his leg beginning from the knee and moving up towards the penis. On multiple occasions he touched Victim No. 2's penis. This scared Victim No. 2 and made him uncomfortable. Victim No. 2 would try to move defendant's hand. Again, however, defendant never threatened Victim No. 2 to keep him quiet. Victim No. 2 was 15 years old during his time at Crittenton. Based on the above conduct, the People charged defendant with two counts of lewd acts on a 15 year old (counts 3 & 4). (Pen. Code, § 288, subd. (c)(1).)

Victim No. 3 would see defendant at least twice a week and speak with him in defendant's office. Victim No. 3's calls to family members usually occurred in defendant's office. Defendant was present for those calls. Victim No. 3 would call his mother, and the calls were important to him. During these phone calls defendant would sometimes put his hand under Victim No. 3's pants and touch his penis. This occurred between five and 10 times. Victim No. 3 did not want defendant to touch him, and on occasions tried to move defendant's hand away, but was generally too depressed to stop

defendant. Victim No. 3 understood defendant was the one with the power to decide his fate of either staying in the country or being sent back to Guatemala. Victim No. 3 feared being sent back to Guatemala. Defendant, however, never threatened Victim No. 3 with any repercussions should he divulge what happened. Defendant tried to help Victim No. 3 and was nice to him most of the time. Victim No. 3 was 16 years old at the time of the touching. Based on the above conduct the People charged defendant with two counts of misdemeanor sexual battery (counts 5 & 6). (Pen. Code, § 243.4, subd. (e)(1).)

Having presented the above evidence, the People rested.

The defense moved to acquit as to the four lewd act counts, arguing the prosecution had not offered any evidence of defendant's age to prove he was at least 10 years older than the victims (an element of the charged offense).

The court denied the motion, stating, "[T]he jurors have seen Mr. Salazar. I mean, I've seen Mr. Salazar. It is so apparent to me that he is ten years older than the three minors who testified. I mean, it's just apparent to me. Now, that's not on the record, and for anyone reviewing this, it is evidence because the jurors have seen Mr. Salazar and they obviously have the date of birth of the alleged victims. But, you know, his physical appearance, it's so apparent to me. Now, I don't know how else to describe his physical appearance on the record other than he looks to me to be ten years at least and even more than ten years older than those who testified. That plus the testimony of the lady who did talk about how old he was when he started working there, [2] and there is substantial evidence to support that element."

The court then gave the prosecutor an opportunity to further buttress the record. The prosecutor stated, "Just to supplement our record, it was an issue that came to my attention almost immediately after I rested. I agree with the court's analysis, but in my own mind, I recognized that I had not yet introduced Mr. Salazar's date of birth. And

---

2
    There is no such testimony in the record.

5

I brought that issue to [defense counsel's] attention, and at that point in time, proposed several possibilities, one of which would be the people reopening, asking the court to take judicial notice of the defendant's date of birth which is on the information. It was also on the felony complaint. He was arraigned on that document — on both documents, and it is standard practice for the court at arraignment to make inquiry as to whether or not the information is correct in terms of the name and date of birth. I also have Mr. Salazar's California D.M.V. — certified copy of that document which does contain his photograph and his date of birth." The court then asked, "[A]re you asking the court for you to reopen?" The prosecutor responded, "The information I have is that Mr. Salazar plans to testify this morning. Given the court's observations, the court's tentative, and the fact that Mr. Salazar has stated that he will be testifying, I don't believe the people need to reopen at this time."

The defense attorney then commented, "My intention was to make a record because I do believe ultimately once Mr. Salazar testifies, [the prosecutor] will elicit a date of birth from him and this issue will become a nonissue."

The defense case consisted of defendant's testimony. Defendant generally denied the allegations by the victims, claiming the only touching would have been taps on the leg or shoulder to indicate it was time to end the phone call, or a hug if one of the minors was upset. The prosecutor's first questions on cross-examination were, "Mr. Salazar, how old are you? [¶] A. Thirty years old. [¶] Q. When is your birthday? [¶] A. May 4th, 1981."

The jury returned a verdict of guilty on two counts of lewd acts against Victim No. 1, two counts of lewd acts against Victim No. 2, and two counts of sexual battery against Victim No. 3. The court sentenced defendant to an aggregate term of four years six months. Defendant timely appealed.

DISCUSSION

Defendant contends the court erroneously denied his 1118.1 motion. He contends there was no substantial evidence proving defendant was at least 10 years older than the victims and that the court erred by finding the defendant's appearance was substantial evidence. We agree.

*Standard of Review*

"In ruling on a motion for judgment of acquittal pursuant to section 1118.1, a trial court applies the same standard an appellate court applies in reviewing the sufficiency of the evidence to support a conviction, that is, '"whether from the evidence, including all reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged." [Citations.]' [Citation.] 'Where the section 1118.1 motion is made at the close of the prosecution's case-in-chief, the sufficiency of the evidence is tested as it stood at that point.'" (*People v. Cole* (2004) 33 Cal.4th 1158, 1212-1213.)

*The Defendant's Appearance Was Not Substantial Evidence of His Age*

Defendant's age was a required element of the lewd acts charges. Section 288, subdivision (a), states, "[A]ny person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony . . . ." Section 288, subdivision (c)(1) states, "Any person who commits an act described in subdivision (a) with the intent described in that subdivision, and the victim is a child of 14 or 15 years, and that person is at least 10 years older than the child, is guilty of a public offense . . . . In determining whether the person is at least 10 years older than the child,

7

the difference in age shall be measured from the birth date of the person to the birth date of the child." Here, Victim No. 1 and Victim No. 2 were 15 years old at the time of the abuse, and thus under section 288, subdivision (c)(1) the People were required to prove defendant was at least 10 years older than the victims.

Under the circumstances of this case, the defendant's appearance was not substantial evidence of his age. The jury would be speculating in trying to determine defendant's age based on his appearance. We are in the somewhat unusual position of knowing defendant's exact age despite the lack of evidence in the prosecution's case-in-chief. He was 11 years 4 months older than Victim No. 1, and 10 years 10 months older than Victim No. 2. To affirm, we would have to conclude a jury could determine, beyond a reasonable doubt, based on appearance alone, the difference between someone who looked 9, 10, or 11 years older than the victims. A jury cannot reliably determine a person's age, based on appearance alone, with that degree of specificity. (*People v. Bassett* (1968) 69 Cal.2d 122, 139 [substantial evidence "'cannot be deemed synonymous with "any" evidence. It must be reasonable in nature, credible, and of solid value; it must actually be "substantial" proof of the essentials which the law requires in a particular case.'"].)

We would face a different situation if the defendant were substantially older than the victims. In that regard this case is distinguishable from *People v. Montalvo* (1971) 4 Cal.3d 328 (*Montalvo*). There defendant was charged with furnishing heroin to a minor. (*Id.* at p. 330.) One of the elements the People had to prove was that defendant was 21 years or older. (*Id.* at p. 333.) The People put on no evidence of the defendant's age, did not allege in the information that defendant was an adult, and the jury was not told the People had the burden to establish defendant was an adult. (*Id.* at pp. 330, 332.) The court reversed defendant's conviction based on the absence of an allegation in the information that defendant was an adult and lack of jury instruction concerning defendant's majority. (*Id.* at p. 330.)

8

The court found, however, that in appropriate cases the mere appearance of the defendant could be independent evidence that the defendant was an adult: "Our holding should not be interpreted so as to require the prosecution in every instance to prove the actual age of the defendant. There will be occasions when his physical appearance will be such that the jury could not entertain a reasonable doubt that he was over the age of 21 years. 'Experience teaches us that corporal appearances are approximately an index of the *age* of their bearer, particularly for the marked extremes of old age and youth. In every case such evidence should be accepted and weighed for what it may be in each case worth. In particular, the *outward physical* appearance of an alleged minor may be considered in judging of his *age*; a contrary rule would for such an inference be pedantically over-cautious.' [Citations.] Moreover, it 'is settled that a view of the scene by the trial judge is independent evidence on which a finding may be made and sustained [citations].' [Citation.] Similarly, a view of the defendant by the trier of fact in an appropriate case may be sufficient to support a finding that the defendant is an adult." (*Montalvo*, *supra*, 4 Cal.3d at p. 335.)

We have no qualms with that rule. "[P]articularly for the marked extremes of old age and youth" (*Montalvo*, *supra*, 4 Cal.3d at p. 335), outward appearance may indeed constitute independent evidence. As the *Montalvo* court noted, however, appearance is only an approximate indicator of age. Where, as here, the jury must make a precise determination of a close call, appearance alone provides only a speculative basis to determine *beyond a reasonable doubt* that defendant is at least 10 years older than the victims. Because the prosecution offered no substantial evidence of defendant's age, the court erred in denying defendant's 1118.1 motion.

*Evidence Adduced During the Defense Case Did Not Cure the Error*

As noted above, the evidence lacking in the prosecution's case-in-chief was brought out during the defense case when the prosecutor elicited defendant's age during

9

cross-examination of the defendant. Did this evidence cure, or perhaps render harmless, the court's error in denying the 1118.1 motion? No.

We are guided by our high court's decision in *People v. Belton* (1979) 23 Cal.3d 516 (*Belton*). There, defendant was charged with violating section 246 (discharging a firearm at an inhabited dwelling house). In a court trial, the only evidence connecting defendant to the crime was the uncorroborated testimony of defendant's 16-year-old stepson, who was an alleged accomplice to the crime. After the prosecution rested, defendant moved for acquittal without specifying the grounds for the motion. The court denied the motion, and ultimately found defendant guilty as charged. (*Belton*, at p. 519.) On appeal the defendant argued the motion for acquittal should have been granted because the only testimony linking defendant to the crime was uncorroborated accomplice testimony. (*Id.* at pp. 519-520; see § 1111 [conviction cannot be based on uncorroborated accomplice testimony].) The People contended the motion was properly denied because defendant failed to specify the grounds for the motion at trial. (*Belton*, at p. 521.)

The *Belton* court held that a defendant need not specify the grounds for the motion at trial. In doing so, the high court reviewed certain basic principles of the criminal justice system and the history of sections 1118 and 1118.1.[3] "Two of the most basic premises of our criminal justice system" are "the presumption of innocence and the duty of the prosecution to prove guilt beyond a reasonable doubt." (*Belton*, *supra*, 23 Cal.3d at p. 520.) "Implicit in these principles is the duty of the prosecution to prove

---

[3] Section 1118 governs acquittal motions in bench trials. Section 1118.1 governs acquittal motions in jury trials. Section 1118 provides for the making of the motion at the close of the prosecution's evidence and the court may weigh the evidence then before it. Section 1118.1 provides for the making of the motion after either the close of either the prosecution's evidence or the defense evidence and before submission of the case to the jury, and the court must determine whether the evidence then before it is insufficient to sustain a conviction.

each element of the crime charged. 'One of the greatest safeguards for the individual under our system of criminal justice is the requirement that *the prosecution must establish a prima facie case by its own evidence before the defendant may be put to his defense*.'" (*Ibid.*) The court then noted that prior to the passage of sections 1118 and 1118.1, a defendant had no procedural mechanism to move for acquittal at the close of the prosecution's case. This put a defendant in the dilemma of either "(1) to rest at the close of the prosecution's case, gambling that the court shares his opinion, or (2) to proceed with presenting his defense." (*Belton,* at p. 521.) Sections 1118 and 1118.1 were meant to avoid that dilemma.

The *Belton* court then concluded that to require defendant to specify the grounds of a motion for acquittal would put defendant in a similar dilemma: "In effect, a defendant would be forced to choose between: (1) specifying the defects in the prosecution's case, thereby affording the prosecutor an opportunity to seek to reopen the case in order to cure such defects; (2) making no motion and resting, thereby sacrificing his right to present a defense for fear that later evidence might cure the defects in the prosecution's case; or (3) making no motion, thereby waiving the right to challenge the prosecution's case-in-chief, and proceeding to present a defense. Forcing a defendant to elect among these alternatives would deny him the intended protection of the section. Further, to require a defendant to state specific grounds in support of the motion for acquittal would place the burden upon him to point out to the prosecutor, as well as to the court, the gaps in the prosecution's case. Such a requirement would come perilously close to compelling a defendant to aid in his own prosecution and would lessen the prosecutor's burden to prove each and every element of the case beyond a reasonable doubt." (*Belton*, *supra*, 23 Cal.3d at pp. 521-522.)

If we were to hold evidence adduced during the defense case could cure an erroneous denial of a section 1118.1 motion, we would put defendants in exactly the dilemma section 1118.1 was meant to avoid: either immediately resting and gambling

11

that a Court of Appeal will see it defendant's way, or presenting evidence at the risk of "curing" the erroneous denial of the section 1118.1 motion. This would create an unacceptable risk of innocent people being convicted: if the defendant chose to rest on the legal argument, the jury may convict without the benefit of defense evidence that could have exculpated the defendant. Further, the *Belton* court emphasized the fundamental importance to our criminal justice system of the principle that "'*the prosecution must establish a prima facie case by its own evidence before the defendant may be put to his defense.*'" (*Belton, supra*, 23 Cal.3d at p. 520.) We cannot simply give the prosecution a pass on that requirement.[4]

Directly on point with our case is *People v. Velazquez* (2011) 201 Cal.App.4th 219 where the court, relying on *Belton*, reached the same result we reach here. The defendant in *Velazquez* was charged with multiple counts of criminal threats (§ 422) and dissuading a victim or witness from prosecuting a crime (§ 136.1, subd. (b)(2)) (*Velazquez*, at p. 223). At trial, the victim could not be located to testify, and the prosecution rested after only putting on testimony from certain officers. (*Id.* at pp. 225-226.) At the close of defendant's case, the court asked the prosecution whether it had any rebuttal. The prosecution announced it had located the victim and a detective had been dispatched to pick up the victim. Before the rebuttal witness was called to testify, defendant moved for acquittal under section 1118.1 based upon the evidence then before the court. The trial court denied the motion, finding the officers' testimony was sufficient evidence. (*Velazquez*, at p. 227.) The victim thereafter testified during the prosecution's rebuttal. (*Id.* at pp. 226-227.) The jury convicted the defendant on all counts. (*Id.* at p. 228.)

---

[4]     Notably, although the *Belton* court did not address the precise issue we face, in *Belton* the prosecution introduced evidence corroborating the accomplice's testimony during its rebuttal case, yet the *Belton* court did not hold that such evidence cured the erroneous denial of the motion to acquit. (*Belton*, *supra*, 23 Cal.3d at p. 543 (dis. opn. of Clark, J.).)

12

The *Velazquez* court reversed the conviction (*Velazquez*, *supra*, 201 Cal.App.4th at p. 232), finding that the evidence "before the court at the time the motion was made" was insufficient to support the conviction (*Id*. at pp. 230-231.) It further held the testimony elicited during the rebuttal case did not cure the error: "[W]e acknowledge that the prosecution's evidence in rebuttal provided the missing evidence, and thus would support the convictions. We are compelled, however, to reverse the convictions, based upon" *Belton*, *supra*, 23 Cal.3d 516. (*Velazquez*, at p. 231.)

Two other principles support our conclusion.

First, section 1118.1 permits a defendant to make a motion for acquittal at the close of the prosecution's case and requires the court to acquit the defendant "if the evidence *then before the court* is insufficient to sustain a conviction." (Italics added.) It would do violence to the statute if, having erroneously denied a 1118.1 motion, we were to affirm based on evidence that was not "then before the court."

Second, traditional appellate principles of harmless error support reversal. The essential question to be asked on appeal is, if the error had not occurred, might the result have been different? (*Chapman v. California* (1967) 386 U.S. 18, 24 ["before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt"]; *People v. Watson* (1956) 46 Cal.2d 818, 836–837 [error of state law requires reversal only if it is reasonably probable the jury would have returned a different verdict absent the error].) Here we know to a certainty the result would have been different: if the trial court had properly acquitted defendant, he would not have been convicted. We cannot in any sense, therefore, say the error was harmless. Accordingly, the evidence of defendant's age elicited during the defense case did not cure, or render harmless, the erroneous denial of defendant's 1118.1 motion.

*Substantial Evidence Supports the Sexual Battery Verdicts*

Defendant contends there is no substantial evidence to support the verdict as to the two counts of sexual battery because there was no evidence the touching was with the intent of arousing, appealing to or gratifying sexual desires.

"[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction" "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 318-319; see also *People v. Johnson* (1980) 26 Cal.3d 557, 576.) The elements of sexual battery are: (1) The defendant touched an intimate part of Victim No. 3; (2) The touching was done against Victim No. 3's will; and (3) The touching was done for the specific purpose of sexual arousal, sexual gratification, or sexual abuse. (§ 243.4, subd. (e)(1); see also CALCRIM No. 938.)

Here, Victim No. 3 testified that while he was on the phone defendant would reach under his shorts and touch his penis. This occurred between five and 10 times. Victim No. 3 did not want defendant to touch him, and on occasions tried to move defendant's hand away, but was generally too depressed to stop defendant.

Defendant contends this evidence is insufficient because defendant never threatened Victim No. 3: "It would seem probable that if appellant's actions were of a sexual nature, as implied by the testimony . . . , he would have made some comment about not speaking to others about what took place in his office, or would have implied that their potential placement in foster care could be jeopardized, or deportation imminent." "In light of the testimony of these three young men, it is clear the People failed to establish appellant acted with the requisite intent and mental state."

We reject defendant's argument. Plainly the jury could infer from Victim No. 3's testimony that defendant's touching of Victim No. 3's penis was sexually motivated. Defendant apparently asks us to reassess the credibility of Victim No. 3's

14

testimony given the absence of any threats, but that is not our task on appeal. Our task is to determine whether substantial evidence supports the verdict, and here it plainly does.

DISPOSITION

The judgment as to counts 1 through 4 (§ 288, subd. (c)(1)) is reversed. The convictions on counts 5 and 6 (§ 243.4, subd. (e)(1)) are affirmed. The case is remanded for resentencing as to counts 5 and 6.[5] The trial court may consider the entire sentencing scheme with regard to counts 5 and 6. (*People v. Torres* (2008) 163 Cal.App.4th 1420, 1431.)

IKOLA, J.

WE CONCUR:

O'LEARY, P. J.

MOORE, J.

---

[5] Because we remand for resentencing, we do not reach defendant's argument that he is entitled to probation.